SETZKORN, Respondent, vs. ADMIL, INC., Appellant.

*February 9—March 7, 1939.*

J. B. *Allen* of Marshfield, attorney, and *M. S. King* of Wisconsin Rapids of counsel, for the appellant.

*William F. Krueger* of Wausau, for the respondent.

MARTIN, J.   As indicated in the foregoing statement, no issue was raised as to the liability of the owner of the property sold to pay the amount of the commission in question. On May 11, 1937, the estate of Emilie Stange through C. E. Stange, general manager, wrote appellant as follows:

"May 11, 1937.

"Admil, Incorporated,

"Marshfield, Wisconsin.

"Gentlemen:   Following up the pleasant visit which the writer had with both of you at the Badger the other evening in regard to the $1,500 which is the five per cent commission on the purchase price of the Badger Hotel and theater property, and all of which Mr. Chas. R. Setzkorn claims

should be paid to him—we are sending you this check with the understanding that you will assume all responsibility in the payment of this commission to the proper party or parties that are entitled to the commission. If necessary to settle this properly, however, you are to return the $1,500 to us.

"We appreciate very much your offering to do this and we know it is going to be some bother to you, but this leaves it where the estate can be closed up in due time.

"You stated that you would give us a letter to this effect, and when you have time to do this we would appreciate your attending to it.

"With best wishes, we are,
"Very truly,
"ESTATE OF EMILIE STANGE.
(Signed) "C. H. STANGE,
"General Manager."

Obviously, this is not the usual case in which the real-estate broker is suing the owner of property sold to recover his commission. In the instant case, the owner of the property sold concedes its liability to pay the commission, and has placed the amount thereof in the possession of the purchaser with directions that it pay said commission to the proper party or parties entitled thereto. It is evident from the letter quoted above that the purchaser of the property, the appellant herein, undertook to do so. The letter stated:

"We appreciate very much your offering to do this and we know it is going to be some bother to you, but this leaves it where the estate can be closed up in due time."

The plaintiff alleges that the sale was made as a result of his efforts and services in bringing together the seller and purchaser. This is denied by the defendant-appellant. Defendant further alleges:

"That all and singular the facts pertaining to the existence and nature of the aforesaid property, its availability for purchase, the identity and whereabouts of the person having in charge the sale of said property, and all other facts constituting the basis for said purchase contract of March 8, 1937,

were acquired for and on behalf of this defendant by said J. P. Adler and Steve Miller, from sources wholly separate from and independent of the plaintiff."

It appears that the preliminary contract of March 8, 1937, was made with S. J. Miller and J. P. Adler. It contained all the terms and conditions of the purchase and sale, it being understood that said Miller and Adler were about to organize the appellant corporation, which corporation when duly organized was to take title to the property in question and pay the consideration in accord with the terms of the preliminary agreement of March 8, 1937. Mr. Miller thereafter became president of the defendant corporation when organized, and Mr. Adler became its secretary and treasurer.

It further appears that the final transaction was closed on or about April 1, 1937; that the plaintiff then presented his claim to Mr. C. H. Stange, who was acting for and on behalf of the estate of Emilie Stange, for the $1,500 commission which he claimed to be due him on the sale. In this connection it appears that Mr. Stange requested the plaintiff to get a written authorization from Miller and Adler to the effect that the commission should be paid to the plaintiff, whereupon the plaintiff returned to Marshfield and procured the following authorization from Miller and Adler:

"April 3, 1937.

"To Mr. Stange: It is absolutely O-K. for you to settle any commission on Hotel deal with Mr. Chas. R. Setzkorn.

"S. J. MILLER.
"J. P. ADLER."

Mr. Stange testified that he suggested to the plaintiff that plaintiff procure a written authorization from Miller and Adler so as to satisfy the heirs of the Stange estate that Miller and Adler would not claim the commission. It appears that within a day or two after issuing the above authorization to the plaintiff, and before the plaintiff had an opportunity to present same to Mr. Stange, Mr. Adler phoned

Mr. Stange not to honor the "O. K." theretofore issued to the plaintiff. The plaintiff testified that after Adler had phoned Stange not to honor the "O. K.," Miller called him and asked plaintiff if he would stand the legal expense in connection with the transaction, explaining that it was necessary that he and Adler take an attorney with them to Merrill when the transaction was closed. In this connection the plaintiff testified:

"When Miller called me by telephone and says, 'Charlie, you didn't render so awful much service in connection with that deal. We had to take an attorney with us to Merrill when this thing was closed, and you ought to pay the fees and attorney expenses we have had in this case.' And I says to him, 'How much is that?' He said he didn't know but asked whether I would take care of it. I told him I didn't know how much it was. About fifteen minutes later, Mr. Miller again called me, stating that he had learned from his attorney that the expenses were $190. In reply to his inquiry as to whether I was willing to pay that bill, I told Miller that it seemed exorbitant; that the broker doesn't furnish an attorney; that there was no reason why I should pay the attorney's fees, if same were that large. Miller said he would like to know right away whether I would take care of that bill because he wanted to close his books."

Mr. Adler testified that Mr. Stange assured him that if it later developed that there was no broker's commission, he, Stange, would be willing to allow the equivalent ($1,500), as a reduction in the purchase price. Now the defendant contends that the plaintiff was not the procuring cause in making the sale, and further that it is entitled to an allowance the equivalent of the commission on the purchase price. No such contention is made in the defendant's answer in this action.

It is evident that as late as May 11, 1937, Mr. Stange had no thought that the defendant company claimed a credit on the purchase price of the property equivalent to the amount of the commission claimed by the plaintiff because,

on that day, he remitted the $1,500 to the defendant company with the request that defendant assume responsibility in making payment of the commission to the proper party or parties entitled to same, and there is no response to this letter from the defendant company or from Adler and Miller, asserting they were entitled to the commission or to a credit of said amount on the purchase price of the property. We think it significant that no such response was made, and although Mr. Stange requested "if necessary to settle this properly, however, you are to return the $1,500 to us," nevertheless defendant has ever since retained the $1,500 in its possession.

Defendant contends that notwithstanding the verdict the judgment thereon is contrary to the provisions of sec. 240.10, Stats. This section provides:

"Every contract to pay a commission to a real-estate agent or broker or to any other person for selling or buying real estate or negotiating lease therefor for a term or terms exceeding a period of three years shall be void unless such contract or note or memorandum thereof describing such real estate, expressing the price for which the same may be sold or purchased, or terms of rental, the commission to be paid and the period during which the agent or broker shall procure a buyer or seller or tenant, be in writing and be subscribed by the person agreeing to pay such commission."

Defendant's position cannot be sustained. While it is true that plaintiff had no written contract such as the statute requires to be in writing from Mr. Stange, it must be remembered that it is the Stange estate that is paying the commission. They do not raise the issue of no valid contract under the statute. Further, it will be noted that Mr. Stange remitted the full amount of the commission to be paid to the defendant company, with instructions that said amount be paid to the proper party or parties entitled to same after the purchase and sale had been fully consummated. All the

parties knew at the time the $1,500 was paid over to the defendant that there was no written contract as to brokerage fees. The defendant is not in a position to raise that issue. In principle, we think this branch of the case is ruled by what is held in the case of *Elbinger v. Capitol & Teutonia Co.* 208 Wis. 163–165, 242 N. W. 568. In that case there was no written contract as required by sec. 240.10, Stats. The services were rendered pursuant to an oral understanding, and it was conceded that an action by the brokers could not have been maintained to recover the value of the brokerage services. The court said (p. 164) :

"However, after the transaction was consummated, the defendant voluntarily settled with the brokers, paying them $200 in cash and giving to each of them its promissory note in the sum of $146. This action is brought to recover on the promissory note given by the defendant to the plaintiff, and the defense is that there was no consideration for the note and it is void. The contention is that as the brokers could not have recovered on their original contract because it was not in writing as required by the provisions of sec. 240.10, the voluntary promise to pay, made after the services were performed, is without any consideration and unenforceable.

"The plaintiff contends that he rendered valuable services to the defendant of which it enjoyed the benefit, and that, while he could not have recovered on the original contract because declared void by statute, nevertheless the fact that he rendered services of value to the defendant, which services were not against public policy, in a transaction not involving moral turpitude, *a moral obligation arose on the part of the defendant to pay therefor, which obligation constituted a good consideration for the subsequent and independent promise of the defendant to pay.*"

After referring to the purpose sought to be accomplished by the enactment of sec. 240.10, Stats., the court said (p. 165) :

"However, that section has accomplished its purpose when it relieves the owner of legal liability under a contract rest-

ing in parol. When the contract is completed, when the services of which the owner has received the benefit have been performed, he is at liberty to say how much he will pay the broker for those services. He may pay him therefor in cash and, when he does so, such payment may not be recovered by him. He may settle with his promissory note, and when he does so at a time when he is dealing at arms' length, at a time when he knows what he has received, the moral consideration resting upon him to pay for that which he has received is a sufficient consideration to support his promise to pay." See cases cited.

The plaintiff makes no claim against the defendant company other than to account to him for the $1,500 it received from Stange to be paid to the proper party or parties entitled to the commission. What was meant by the words: "In the payment of this commission to the proper party or parties that are entitled to the commission?" All the parties to the transaction knew that there was no legal brokerage contract in the form required by sec. 240.10, Stats. It was understood that Stange was willing to pay a five per cent commission on the selling price to the plaintiff or any other person who would bring about a sale of the property, but that he was not willing to give the usual brokerage contract such as the statute requires. We think it would be a strained construction under all the facts and circumstances of the case to hold that the words "entitled to" mean the person or persons who had a legal contract under the statute. All knew that there was no such written contract. The $1,500 was turned over to defendant company after the transaction had been closed. We believe that the only reasonable construction to be placed upon the words "entitled to" is that they mean the party or parties through whose efforts the seller and purchaser were brought together; in other words, the procuring cause resulting in the purchase and sale of the property in question. By its answer the defendant admits that Mr. Stange intended that the commission be paid

to the plaintiff, provided he was the party through whose services the buyer and seller were brought together, and, provided, further, that if no such services had actually been rendered by the plaintiff, in that event, it was the intention of Stange to pay defendant as the purchaser of said property the equivalent of such commission. Upon the pleadings and the evidence we think the trial court correctly submitted to the jury the only issue in the case, namely: Was the plaintiff the procuring cause in the making of the sale in question?

It would serve no useful purpose to detail the evidence beyond what is indicated.

"The rule is well established that if the evidence is conflicting, or if the inferences to be drawn from the credible evidence are doubtful and uncertain, and there is any credible evidence which under any reasonable view will support or admit of an inference either for or against the claim or contention of any party, then the rule that the proper inference to be drawn therefrom is a question for the jury should be firmly adhered to, and the court should not assume to answer such question either upon a motion for nonsuit or direction of verdict, or by substituting another answer after the verdict is returned." *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 115, 116, 228 N. W. 741. See cases cited.

After a careful examination of all the evidence, coupled with the admission in defendant's answer to which reference has been made, we are of the view that the jury verdict must stand and the judgment entered thereon be affirmed.

*By the Court.*—Judgment affirmed.

ROSENBERRY, C. J., and FRITZ, J., dissent.