In re HANNAN.

HANNAN v. CHARNESS et al.

No. 7886.

Circuit Court of Appeals, Seventh Circuit.

May 1, 1942.

Bernard F. Mathiowetz, of Milwaukee, Wis., for appellant.

Richard R. Davis, of Milwaukee, Wis., for appellee Marshall & Ilsley Bank.

Walter Schinz, Jr., and Herbert R. Manger, both of Milwaukee, Wis., for appellee, David Charness, trustee.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This appeal is from an order entered September 4, 1941, affirming an order of the Referee in Bankruptcy revoking the discharge theretofore granted to appellant (hereinafter referred to as the "bankrupt") on January 19, 1940. Two petitions to revoke were filed on December 31, 1940, one by the trustee in bankruptcy and the other by a creditor. By answer the bankrupt denied the allegations of the petitions; evidence was heard by the Referee and a written decision, together with his findings and conclusions, was filed by him. In conformity therewith, the Referee's order of revocation was filed July 8, 1941, which, upon the bankrupt's petition for review, was affirmed by order of the court from whence comes the appeal.

On October 31, 1939, the bankrupt filed his petition for adjudication. In connection therewith a schedule in the usual form was filed purporting to list all creditors, as well as an accurate inventory of all property, both real and personal. His total debts as scheduled amounted to more than $231,000, and total assets, excluding exemptions, amounted to about $18,500. He was adjudicated a bankrupt on the same day that his petition was filed. It may be noted that by Section 14 of the Chandler Act, 11 U.S.C. A. § 32, such adjudication operated as an application for discharge.

The petitions for revocation set forth in detail facts concerning a number of property rights and interest omitted from the schedules, allegedly for the purpose, and with the intent, of deceiving the court and to hinder, defraud and delay his creditors. It was further alleged that knowledge of such omitted property rights and interest was acquired by the petitioners subsequent to the date of the bankrupt's discharge, and that the statutory period for applying for an order of revocation had not expired. There is no dispute but that certain matters were omitted from the schedules as alleged in the petitions for revocation. Some of the more important items thus omitted, as found by the Referee, are:

1. That he was an heir and legatee under the will of Timothy J. Hannan, deceased, then pending in probate in the County Court of Milwaukee County;

2. That he was an heir at law of Anna Frawley, deceased, whose estate was then pending in the County Court of Milwaukee County;

3. That he was indebted to the estate of Margaret Sedgley in the sum of approximately $7000.00 by reason of embezzlements committed by him as executor thereof;

4. That he had compensation accruing to him under written agreement from the Sheco Realty Company;

5. That he had a written agreement with the Milwaukee Gas Light Company under which he knew when he filed his schedules there was shortly bound to be due either $12,000.00 in installments, or $11,-000.00 cash.

The first contention made by the bankrupt is that neither the allegations of the petitions nor the evidence is sufficient to justify a revocation as authorized by Section 15 of the Bankruptcy Act, 11 U.S.C.A. § 33. The argument is made that this provision must be distinguished from Section

14 of the Act, 11 U.S.C.A. § 32, which provides the conditions whereby objections to discharge may be interposed. In other words, it is the bankrupt's contention, as we understand it,.that concealment of assets by a bankrupt, while sufficient under Section 14 to defeat an application for discharge, can not be made the basis for the revocation of a discharge. In fact, it is argued that the fraud designated in Section 15 concerns only the method and manner employed by the bankrupt in obtaining a discharge, such as inducing the Clerk to refrain from mailing the statutory notice of the hearing on the application therefor.

Of the authorities cited in support of this argument, there is one only which appears to be in point. In re Weintrob, D. C., 263 F. 904, 906. It further appears that what the court said in that case was dictum, but whether so or not, we do not agree with the contention. It is our view that any fraud which will defeat a discharge under Section 32 may be utilized to revoke a discharge under Section 33 under the conditions imposed by the latter section. Such conditions are that the party seeking the revocation be not guilty of laches; that the application be filed within one year after the discharge has been granted, and that the knowledge of the fraud has been acquired subsequent to the date of the discharge. The bankrupt's contention would lead to the incongruous result that no matter how much fraud he perpetrated upon his creditors and the court he would be safe and secure provided he could keep them "in the dark" until after his discharge.

The most important item omitted from the schedule concerns a written agreement between the bankrupt and the Milwaukee Gas Light Company made July 22, 1939.[1] This agreement provided for a commission of $12,000 payable to the bankrupt for services rendered in the negotiation of a proposed lease to the Milwaukee Western Fuel Company upon the signing of said lease by the latter company. Through the efforts of the bankrupt, this latter company had, on July 15, 1939, acquired an exclusive four-months option, upon the real estate described in the proposed lease. The consideration paid for the option was $4,000, and annexed to the option was the proposed lease. On November 13, 1939, the lease was executed by the Milwaukee Gas Light Company as lessor, and the Milwaukee Western Fuel Company as lessee. The provisions of the lease are identical with those in the proposed lease annexed to the option agreement.

It is further disclosed, however, that on November 1, 1939 (the day following the bankrupt's petition for adjudication), the Milwaukee Western Fuel Company gave written notice to the Milwaukee Gas Light Company of the affirmative exercise of the option of July 15, 1939, in confirmation of an earlier telephone notice to that effect. The Referee found that the bankrupt, at the time of filing his petition, had knowledge of this affirmative action on the part of the Western Fuel Company and that, at that time, there was due the bankrupt the commission as provided in his agreement with the Gas Company as of July 22, 1939. It was further found that all of the services rendered by the bankrupt in connection with the transaction were prior to the latter date. Notwithstanding the bankrupt's contention to the contrary, we are satisfied that the record supports the Referee's finding in this respect. Any doubt which may exist, however, is dispelled by subsequent events.

On November 27, 1939, the bankrupt submitted to the trustee two copies of his agreement with the Milwaukee Gas Light Company with the representation that the option in favor of the Western Fuel Company had not been exercised and that it, therefore, had no value. There is no room for doubt but that the bankrupt intentionally made this misrepresentation for the purpose of concealing the facts relative to the commission of $12,000. The fact that this money was due and payable to the bankrupt was not divulged to the trustee until September 13, 1940, when he was examined on a summary hearing before the Referee. On January 19, 1940, the bankrupt obtained his discharge. At that time he divulged nothing concerning the money due and owing him from the Gas company. About a month subsequent to his discharge, he accepted from the Gas company a check for $10,000 in discharge of its liability to him. The check was cashed on February 16, 1940, and the currency secreted until several months later. At the time of the hearing on the application in the instant

---

[1] While this agreement was dated June 1, 1939, it was not accepted by the Milwaukee Gas Light Company until July 22, 1939. The Referee found it was executed on the latter date and we think the facts and circumstances justify such finding.

matter, the bankrupt claimed the money had all been expended.

In our opinion there is no escape from the conclusion that this agreement with the Gas company was a property interest which should have been scheduled and turned over to the trustee. We think it is further plainly disclosed that the bankrupt deliberately concealed this property interest from the trustee for his own benefit, thereby hindering and defrauding his creditors.

We have not overlooked the bankrupt's argument that his agreement of July 22, 1939, with the Milwaukee Gas Light Company was invalid as not complying with Section 240.10 of the Wisconsin Statute concerning real estate agency contracts. In our opinion, however, that provision has no application in the instant situation. We need not decide whether or not the agreement is in conformity with this provision because such provision, as construed by the courts of Wisconsin, is for the protection of the owners of real estate rather than brokers. Elbinger v. Capitol & Teutonia Company, 208 Wis. 163, 165, 242 N.W. 568; Setzkorn v. Admil, Inc., 230 Wis. 646, 652, 284 N.W. 544. Moreover, when the agreement was made, the services had been rendered for which the bankrupt was to receive compensation. We are of the view that at that time he had had an assignable interest or property right which passed to the trustee. In re Leibowitt, 3 Cir., 93 F.2d 333, 335, 115 A.L.R. 623; Horton v. Moore, 6 Cir., 110 F.2d 189.

There is no occasion to discuss the details as to other items which were found as fraudulent concealments. The bankrupt argues that his indebtedness to the Timothy J. Hannan and the Anna Frawley estate was as much as the value of his interest therein, and that he was not obligated to schedule such interests. This argument overlooks the fact that the bankruptcy law imposes upon one seeking its benefits the positive duty to schedule for the benefit of creditors all his interest and property rights. It is the trustee and the creditors, not the bankrupt, who are charged with the responsibility of determining whether such right and interest are of value to the estate. There may be instances, where a failure to schedule a property right, as the result of an honest mistake of law or fact, would not preclude a discharge. If so, such rule has no application to the instant situation. The court ap-

proved the Referee's findings that the failure to schedule the assets in controversy was for the purpose of defrauding creditors. We find no reason to disturb the conclusion of the court and Referee in this respect—in fact, we think they are amply supported by the record.

The order appealed from is affirmed.