862 A.2d 1102

**L.A. BOWIE**

v.

**ROSE SHANIS FINANCIAL SERVICES, LLC.**

No. 2602, Sept. Term, 2003.

Court of Special Appeals of Maryland.

Dec. 9, 2004.

228

Charles W. Ayres, Jr., Glen Burnie, for Appellant.

Brian L. Moffet (Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC on the brief), Baltimore, for Appellee.

Panel: KENNEY, ADKINS and CHARLES E. MOYLAN, JR. (retired, specially assigned), JJ.

CHARLES E. MOYLAN, Jr., Judge, retired, specially assigned.

This appeal raises the question of what happens to the ownership of a law suit that once vests in the trustee of a bankruptcy estate after the estate subsequently closes with the law suit yet unpursued. Is ownership in limbo? How, if at all, may a trustee, through inaction, abandon such an asset, thus permitting it to revest in the original debtor? Is there a difference between the fate of a law suit that has been formally scheduled as an asset of the estate and the fate of one that has not?

## The Present Case

On March 25, 2003, the appellant, L.A. Bowie ("Bowie"), filed a five-count complaint against the appellee, Rose Shanis Financial Services, LLC ("Rose Shanis"), in the Circuit Court for Baltimore City. On December 2, 2003, Rose Shanis filed a Motion to Dismiss or, in the Alternative, a Motion for Summary Judgment. The second paragraph of that motion well states the dominant issue before us on this appeal.

2. Approximately one year after the alleged events giving rise to this lawsuit occurred, Plaintiff filed for bankruptcy protection on December 21, 2001. As a result, *the claims alleged against Rose Shanis do not belong to Plaintiff, but rather to his bankruptcy estate.* Because the alleged claims were neither exempted from the estate nor abandoned by the bankruptcy trustee, *Plaintiff is without standing to bring or pursue this action.* Accordingly, *Rose Shanis is entitled to the dismissal of the Complaint for lack of subject matter jurisdiction.*

(Emphasis supplied).

Following a full hearing, including extensive argument by both parties, on January 12, 2004, Judge Kaye Allison granted summary judgment in favor of Rose Shanis on the ground that there was a "lack of subject-matter jurisdiction." This appeal timely followed. In it, Bowie raises two issues.

1. Are the claims of Appellant property of his Bankruptcy Estate and does he have standing to file this action?

2. If the claims of Appellant are property of his Bankruptcy Estate, what procedure should be followed under the circumstances herein?

## The Chronology

The question of whether the Circuit Court for Baltimore City had subject matter jurisdiction over the underlying suit was essentially the question of whether the plaintiff, Bowie, had standing to bring the suit, to wit, 1) Did the cause of action belong to Bowie when he filed the suit on March 25, 2003? or, more significantly, 2) Did the cause of action belong

to Bowie when Judge Allison granted summary judgment motion on January 12, 2004? The chronology of events is critically important.

## A. The Basis for the Underlying Suit: November 3, 2000

On June 12, 2000, Bowie obtained a loan of $30,024.88 from Rose Shanis. The loan was secured by two vehicles owned by Bowie, a 1998 Ford Expedition and a 2000 Ford Excursion. When Bowie failed to make his August and September 2000 payments on the loan, Rose Shanis exercised its contractual right under the terms of the loan agreement and repossessed the two vehicles. Rose Shanis advised Bowie of its intent to sell both vehicles. On October 31, 2000, the 2000 Ford Excursion was sold at public auction. Rose Shanis did not sell the 1998 Ford Expedition. It relinquished possession of that vehicle to Arcadia Financial, Ltd., upon learning that Arcadia was the senior lienholder. Shortly thereafter, Arcadia caused the 1998 Ford Expedition to be sold.

Bowie filed its five-count complaint against Rose Shanis on March 25, 2003. The complaint alleged 1) fraud, 2) negligence, 3) breach of contract, 4) conversion, and 5) interference with a contract. Our concern is not with the merits of that suit, but only with the dates of its underlying events. Every event alleged in the five-count complaint occurred between June 12, 2000, and November 3, 2000.

## B. The Bankruptcy: December 2001–April 2002

On December 21, 2001, a little more than a year after the last of the events that ultimately gave rise to the cause of action in this case, Bowie filed a Voluntary Petition for Chapter 7 Bankruptcy. Along with the bankruptcy petition, Bowie filed a Statement of Financial Affairs and Schedules of Assets and Liabilities. Bowie did not list as an asset or otherwise identify any alleged cause of action against Rose Shanis. Bowie never thereafter amended any of his bankruptcy statements or schedules to include his potential claim against Rose Shanis.

In an affidavit filed by Bowie on December 18, 2003, moreover, Bowie acknowledged 1) that, at the time of filing for bankruptcy, he was fully aware of his potential claim against Rose Shanis; 2) that he discussed with his lawyer the pros and cons of listing the claim in his bankruptcy schedules and exemptions; and 3) that he refrained from listing the claim with "the intention that all matters relating to Rose Shanis Financial, LLC, claims would be dealt with outside of the Bankruptcy" and not by the bankruptcy trustee. Implicit in that decision was that any possible recovery on the claim would accrue to the benefit of Bowie personally and not to the benefit of the creditors of the bankrupt estate.

> *I discussed the possible claim against Rose Shanis* Financial, LLC, the Defendant in this case *with my Bankruptcy Attorney* David L. Ruben, Esquire. I was advised that it would not be necessary to list the possible claims against Rose Shanis Financial, LLC, in my Bankruptcy Schedules or exemptions. Also, *it was determined that we would not list any possible claim* by Rose Shanis Financial, LLC, against me for the remaining balance of the Loan which is the subject matter of the pending litigation. *This was done with the intention that all matters relating to Rose Shanis Financial, LLC, claims would be dealt with outside of the Bankruptcy.*

(Emphasis supplied).

The trustee in bankruptcy reported to the Bankruptcy Court that

> I have neither received nor paid any money on account of this estate except exempt property; that *I have made a diligent inquiry into the financial affairs of the Debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution* from the estate over and above that exempted by law, and the Debtor's 341 meeting has been held and concluded.

(Emphasis supplied). The bankruptcy proceeding was closed on April 23, 2002, and Bowie was discharged from bankruptcy,

without there having been any distribution of assets to creditors whatsoever.

## C. The Present Claim: March 2003

The present claim was filed on March 25, 2003. On December 2, 2003, six weeks before the hearing before Judge Allison on the motion for summary judgment, Rose Shanis filed its Motion for Summary Judgment. In the accompanying 13–page memorandum of law in support of that motion, Rose Shanis raised and argued in full detail, citing extensive case law and statutes, the fact that the cause of action no longer belonged to Bowie but to the bankrupt estate. That memorandum pointed out that Bowie had neither scheduled the potential claim as an asset nor attempted to have it exempted from the bankruptcy estate. The conclusion alleged in that Memorandum of Law could not have been more clear.

*Because Plaintiff lacks standing to sue Rose Shanis as a result of his filing for bankruptcy, this Court does not have subject matter jurisdiction over this case.* Accordingly, Rose Shanis is entitled to the dismissal of the Complaint with prejudice.

(Emphasis supplied).

Notwithstanding that "red alert," Bowie, in the intervening two months before the granting of summary judgment, did nothing by way of seeking to amend his complaint or by way of making any reference to the bankrupt estate or to the former bankruptcy trustee as a possibly interested party. It was during that period at the very latest, if not indeed as much as five months before the beginning of that period, that any three-year limitations period for the filing of the claim would have run. Indeed, it may already have been too late for Bowie to have taken any curative action and he is in no position to fault Judge Allison in this regard.

Any possible limitations problem for a bankruptcy trustee was a *fait accompli* well before Judge Allison was called upon to make any sort of a ruling in this case. If a potential refiling of this claim by anyone represented a possible alternative remedy in this case, it was Bowie who allowed its viability

to lapse at some time before November 3, 2003. Our concern, therefore, is with the legal entitlement of Bowie in his own right and not with the entitlement of a possibly resurrected bankruptcy estate.

## The Ownership of the Cause of Action During the Pendency of the Bankruptcy

Bowie does not seriously dispute the fact that, with his filing for bankruptcy, the owner of this suit became the bankruptcy estate and was no longer Bowie himself. 11 United States Code, § 541(a)(1) provides:

(a) *The commencement of a case under* section 301, 302, or 303 of *this title creates an estate. Such estate is comprised of* all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, *all legal or equitable interests of the debtor in property as of the commencement of the case.*

(Emphasis supplied).

In *Pacific Mortgage and Investment Group, Ltd. v. Horn,* 100 Md.App. 311, 319, 641 A.2d 913 (1994), Judge Cathell held squarely:

While the bankruptcy was open, *the estate was the owner of the suit.* 11 U.S.C. § 541(a)(1) provides that, an "estate is comprised of . . . all legal or equitable interests of the debtor in property. . . ." *The bankruptcy trustee is the proper party to bring an action for injury to a person's property while a bankruptcy case is open; the debtor does not have standing to bring a claim.*

(Emphasis supplied).

The definition of "legal and equitable property interests," in turn, indisputably establishes that all causes of action belonging to a debtor at the time the bankruptcy petition is filed are included in that term. *See Mitchell Excavators, Inc. v. Mitchell,* 734 F.2d 129, 131 (2d Cir.1984) ("estate" under § 541 " 'includes all kinds of property, including . . . causes of action' "); *see also Matter of Yonikus,* 996 F.2d 866, 869 (7th

Cir.1993) (Section 541 has been construed "most generously" to include "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative and derivative"); *In re Ozark Equip. Co., Inc.,* 816 F.2d 1222, 1225 (8th Cir.1987) ("causes of action belonging to the debtor at the commencement of the case are included within the property of the estate"); *Tignor v. Parkinson,* 729 F.2d 977, 980 (4th Cir. 1984) (interpreting the scope of § 541 as "broad. It includes all kinds of property, including tangible or intangible property, causes of action. . . .").

Upon the appointment of a trustee in bankruptcy, the trustee succeeds to all causes of action formerly held by the debtor and the debtor lacks standing to pursue those causes of action. 11 U.S.C. § 323(a) (providing that a trustee in a Chapter 7 bankruptcy action is the sole representative of the estate); *Detrick v. Panalpina Inc.,* 108 F.3d 529, 535 (4th Cir.1997); *National American Ins. Co. v. Ruppert Landscaping Co., Inc.,* 187 F.3d 439, 441 (4th Cir.1999) ("If a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim."); *Stanley v. Sherwin–Williams Co.,* 156 B.R. 25, 26 (W.D.Va.1993) (preventing Chapter 7 debtor from litigating a cause of action which belonged to the estate on the grounds that the debtor "lacks standing because the cause of action is [no longer] his to assert").

*Krank v. Utica Mutual Insurance Co.,* 109 B.R. 668, 669 (E.D.Pa.1990), is very clear that the ownership of a cause of action is in the bankruptcy estate and remains in the estate unless and until the cause of action is legally abandoned by the bankruptcy trustee, even after the debtor has been discharged from bankruptcy and the bankruptcy estate has been closed.

Upon the filing of a petition for bankruptcy, the estate is comprised of all property of the debtor including all legal and equitable interests of the debtor, unless the property is specifically excluded. 11 U.S.C. § 541. *The scope of § 541 is quite broad and it includes most claims the debtor may have against others.*

*Once a cause of action becomes the property of the estate, the debtor may not bring suit on that action unless the property has been abandoned by the trustee.*

(Emphasis supplied).

It is beyond dispute 1) that Bowie's claim against Rose Shanis, whatever its merits, had accrued as of the time Bowie filed for bankruptcy; and 2) that the ownership of the claim, therefore, passed to the trustee in bankruptcy as of that time. The pertinent question then becomes: "How, if at all, the ownership of that claim and the consequential right or standing to bring this suit might ever revert to Bowie?"

## How May a Bankruptcy Estate Abandon Ownership of a Claim?

In *Pacific Mortgage v. Horn,* 100 Md.App. at 319–20, 641 A.2d 913, Judge Cathell quoted from the Bankruptcy Code as it listed the exclusive three ways in which the property of a bankruptcy estate may be abandoned.

*Appellee contends,* however, *that the bankruptcy trustee abandoned this suit when the bankruptcy case closed,* subsequent to the filing of this suit. 11 U.S.C. § 554, "**Abandonment of property of the estate**," provides in part:

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(c) *Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor . . . .*

"*Abandonment requires* either a court order after a notice and a hearing or *a failure to administer scheduled assets*

*and a closing of the case." Behrens v. Woodhaven Ass'n,* 87 B.R. 971, 973 n. 1 (Bankr.N.D.Ill.1988).

(Emphasis supplied).

Unless these formalities are satisfied, the property of the estate is not abandoned. It remains the property of the estate and there are no exceptions to this rule. Section 554(d) continues:

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

In this case, the first two modalities of abandonment are not remotely involved. It is the third modality, pursuant to subsection (c), that Bowie invokes, as he argues that the failure of the bankruptcy trustee to pursue a potential claim, of which the trustee was arguably aware, coupled with the subsequent closing of the bankruptcy estate constituted an abandonment of the potential claim back to him.

### Scheduled Assets Versus Unscheduled Assets

■ The flaw in Bowie's reasoning is his failure to acknowledge the diametrically different treatments accorded scheduled assets and unscheduled assets. 11 U.S.C. § 554(c) expressly addresses "any property *scheduled* under section 521(a)(1) of this title." (Emphasis supplied). It does not address unscheduled property. *Pacific Mortgage v. Horn,* 100 Md.App. at 320, 641 A.2d 913, in turn speaks only to "a failure to administer *scheduled* assets" as a modality of abandonment. (Emphasis supplied).

The obligation is on the debtor to list all assets. 11 U.S.C. § 521(1) is an absolute, as it directs:

*The debtor shall—*

(1) *file* a list of creditors, and unless the court orders otherwise, *a schedule of assets* and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs.

(Emphasis supplied).

■ The requirement that a debtor, seeking the protection of the bankruptcy law, schedule a full list of all assets and

property rights is no mere trivial formality with which he may claim substantial compliance. *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 416–17 (3rd Cir.1988), well articulates the paramount importance of a rigorous scheduling requirement.

A long-standing tenet of bankruptcy law requires one seeking benefits under its terms to satisfy a companion duty to schedule, for the benefit of creditors, all his interests and property rights. *In Re Hannan,* 127 F.2d 894 (7th Cir. 1942).

Section 521 of the current Bankruptcy Code outlines a non-exhaustive list of the debtor's duties in a bankruptcy case. *Foremost for our purposes, the debtor is required to* "*file a ... schedule of assets and liabilities ...* and a statement of the debtor's financial affairs...." 11 U.S.C. § 521(1) (1978).

(Emphasis supplied).

Bowie's statement in his affidavit 1) that he discussed with his lawyer whether to schedule the claim, 2) that he followed his lawyer's advice that it would not be necessary to do so, and 3) that the deliberate omission "was done with the intention that all matters relating to Rose Shanis Financial, LLC, claims would be dealt with outside of the Bankruptcy," far from excusing Bowie's failure to comply with § 521(a), accentuates the deliberate nature of the omission. The consequences of that omission control the outcome of this appeal.

*Pacific Mortgage v. Horn, supra,* illustrates the stark difference in consequences of a bankruptcy trustee's 1) failure to administer a scheduled cause of action and 2) his failure to administer an unscheduled cause of action. The first will, pursuant to § 554(c), result in an abandonment of that asset by operation of law; the second will never do so. In *Pacific Mortgage,* a potential law suit, temporarily in control of a trustee in bankruptcy, was held by this Court to have been abandoned by the trustee, through inaction, and to have revested in the debtor after his discharge from bankruptcy. Absolutely critical to our decision, however, was the fact that the cause of action had been "properly scheduled."

*Upon review of appellee's description and listing of this case in her bankruptcy schedule, we find that it was properly scheduled.* Indeed, appellants do not argue to the contrary. When property is "scheduled as an asset of the estate for the benefit of creditors,"

> the trustee, creditors and representatives of the estate [are] put on notice of its existence and the fact it [is] a claim in favor of the estate. "[W]here the trustee has knowledge that is sufficient to put him upon diligent inquiry as to the subject asset, the abandonment is held to have been knowingly made and hence is irrevocable."

*Starrett v. Starrett,* 225 N.J.Super. 150, 541 A.2d 1119, 1123 (A.D.1988).

100 Md.App. at 320, 641 A.2d 913 (emphasis supplied).

Of secondary significance in *Pacific Mortgage* was the fact that "appellee paid her creditors in full" and that no purpose, therefore, would have been served by preventing the revesting of ownership of the law suit in the former debtor.

> Also, *it is of no small significance that appellee paid her creditors in full.* The trustee has a duty to protect the creditors. *Since the creditors were paid in full, there would be no purpose for the trustee to assert and maintain control over this suit.* We thus hold that the bankruptcy trustee did abandon this suit when the bankruptcy was closed.

100 Md.App. at 320–21, 641 A.2d 913 (emphasis supplied). In this case, by dramatic contrast, Bowie's creditors received nothing.

█ There may not, on the other hand, be an abandonment of a cause of action by a bankruptcy trustee in a case where the debtor failed to list the cause of action as an asset. In *Adams v. Manown,* 328 Md. 463, 479, 615 A.2d 611 (1992), Judge Rodowsky quoted with approval from *Krank v. Utica Mutual Ins. Co.,* 109 B.R. 668 (E.D.Pa.), *aff'd without opinion,* 908 F.2d 962 (3d Cir.1990).

> "If a trustee chooses to abandon a claim or is ordered to do so, the debtor may assert title to the cause of action and bring suit upon it. *If,* however, *the debtor fails to list a*

*claim as an asset, the trustee cannot abandon the claim because he or she will have had no opportunity to determine whether it will benefit the estate.* In such circumstances, the debtor may not claim abandonment and seek to enforce the claim after discharge[.]"
(Emphasis supplied).

### The Allocation of the Burden of Proof As to Abandonment of an Asset

■ It is clear, moreover, that when a debtor, following his discharge from bankruptcy, claims that because the bankruptcy trustee failed to pursue a cause of action he thereby abandoned it, the burden of proving such an abandonment is allocated to the debtor. *Stein v. United Artists Corp.*, 691 F.2d 885, 890–91 (9th Cir.1982), was unequivocal in this regard:

Unless property is abandoned or intentionally revested, title generally remains in the trustee. Abandonment requires affirmative action or some other evidence of intent by the trustee. *A bankrupt alleging abandonment has the burden of proving at least the trustee's intention to abandon the asset.*

(Emphasis supplied). See also *United States v. Ivers*, 512 F.2d 121, 124 (8th Cir.1975); *Gochenour v. Cleveland Terminals Bldg. Co.*, 118 F.2d 89, 94 (6th Cir.1941).

In *Stein v. United Artists* the Ninth Circuit also pointed out, that, with respect to an unscheduled cause of action, it is virtually impossible for a debtor to satisfy that burden of proving abandonment.

Courts generally have not permitted parties asserting title to unlisted causes of action to enforce the claim, *because they cannot demonstrate abandonment by the trustee.*

691 F.2d at 891 (emphasis supplied).

### Talking to a Trustee in Bankruptcy Is Not Tantamount to Scheduling an Asset

Bowie freely acknowledges, as he must, that his petition for bankruptcy never scheduled as an asset of his estate his

potential suit against Rose Shanis. In a dazzling display of fancy footwork, however, he nonetheless maintains that the bankruptcy trustee, albeit once in lawful possession of such a potential claim, abandoned the claim by operation of law. Bowie's verbal alchemy transmutes an unscheduled asset into something that bears every characteristic of a scheduled asset, as he asserts in his brief:

A. The Trustee abandoned alleged asset.

The potential claims against Rose Shanis LLC were not listed in the Petition for Bankruptcy. However Appellant and his attorney David L. Ruben, Esquire appeared at the First meeting of Creditors with David E. Rice, the Trustee appointed in the Bankruptcy Case. *The Appellant was asked if he had any pending legal actions and he truthfully stated that he did not at that time. When he was asked about ownership of Motor Vehicles, he explained the situation that is outlined in the Complaint.* The Trustee after being informed of the possible claim against Rose Shanis did not request further information or an Amendment of any of the schedules. *The Trustee took no action to pursue any possible claims or to allege that the Bankruptcy Estate owned the claims at any time.*

(Emphasis supplied).

Once having hopefully turned the base metal of an unscheduled asset into the pure gold of a scheduled asset, Bowie glibly invokes the automatic abandonment provision of 11 U.S.C. § 554(c):

A Trustee may pursue a claim of the Bankruptcy Estate or he may abandon the claim. Under 11 U.S.C. [554] a Trustee may abandon a claim of operation of law if it has not been administered by the time the Bankruptcy Case is closed. *It is clear in this case although the Trustee was informed of the possibility of a claim against Rose Shanis he chose not to pursue the matter as part of his administration of the Bankruptcy Estate.*

(Emphasis supplied).

Although it is not critical, or even material, to the legal resolution of this issue, we cannot help but note the flimsy, if

not indeed non-existent, nature of Bowie's factual predicate in this regard. After conceding in his brief that when asked "if he had any pending legal actions, he truthfully stated that he did not at that time," he relies on an affidavit to establish otherwise. Referring to his first meeting with the bankruptcy trustee and his creditors, Bowie's sole substantive statement in that affidavit is:

> As a result of questioning relating to Motor Vehicles, I stated to the Trustee the facts relating to my possible claim against Rose Shanis Financial, LLC.

That unilluminating statement may mean nothing more than, "When asked if I had any automobiles, I said that my automobiles had been repossessed by the finance company." Reading into that answer about the repossession of motor vehicles the existence or the details of a possible legal action against the finance company is an exercise in pure speculation. Our observation in this regard, however, is, in any event, unnecessary to the legal resolution of this issue.

Even assuming, *arguendo*, that Bowie had advised the bankruptcy trustee in late 2001 or early 2002 of everything that was later alleged in his formal complaint against Rose Shanis of March 25, 2003, such a furnishing of information to the trustee would not, as a matter of law, transform an unscheduled asset into a scheduled asset or the legal equivalent of a scheduled asset. Neither would it shift from Bowie to the bankruptcy trustee the obligation to investigate or to pursue the viability of the potential cause of action and to make binding decisions with respect to it.

Precisely the same situation was before the United States Court of Appeals for the Eighth Circuit in *Vreugdenhill v. Navistar International Transportation Corp.*, 950 F.2d 524 (8th Cir.1991). Navistar International there, like Rose Shanis here, was granted summary judgment in its favor because the suit against it was ruled to be the property of a bankruptcy trustee and not that of Vreugdenhill. Vreugdenhill, like Bowie here, had a potential claim when he filed for bankruptcy but failed to schedule it as an asset. He argued, however, that he

had informed the trustee of the claim and that that was tantamount to a formal scheduling of it.

A trustee was appointed to administer Vreugdenhill's estate. *Vreugdenhill had not scheduled at this time, nor did he ever schedule, his potential claim* against IHC for failure to accept parts under South Dakota law. *Vreugdenhill alleges, however, that he informed the trustee of the potential claim* against IHC informally and requested that the trustee pursue the claim.

950 F.2d at 525 (emphasis supplied).

Vreugdenhill argued, as does Bowie here, that the failure of the trustee to pursue the claim amounted to the abandonment of the claim by operation of law and that the ownership of the claim thereby reverted to him. The reasons given by the Eighth Circuit for rejecting that argument are absolutely dispositive of Bowie's indistinguishable argument in this case.

On appeal, Vreugdenhill concedes that the trustee never formally abandoned the present claim....

*Vreugdenhill argues that because he never concealed the claim from the trustee and because he had previously raised the issue in his motion for an Order to Show Cause, the claim was "necessarily scheduled."* Because the trustee did not pursue the claim, Vreugdenhill contends, the claim was unadministered at the close of the case and passed to the debtor by operation of law. This court finds, however, that *in order for property to be abandoned by operation of law pursuant to section 554(c), the debtor must formally schedule the property before the close of the case. It is not enough that the trustee learns of the property through other means; the property must be scheduled* pursuant to section 521(1). *See* 4 *Collier on Bankruptcy,* ¶ 554.02[5] (1982). It is clear that Vreugdenhill never, scheduled the potential claim against IHC for failure to accept returned parts. Therefore, the claim against IHC could not be abandoned by operation of law.

950 F.2d at 525–26.

In *Jeffrey v. Desmond,* 70 F.3d 183 (1st Cir.1995), the First Circuit dealt with precisely the same type of claim by a

bankrupt debtor who failed to schedule a pending state court action as an asset of his estate and subsequently, following his discharge from bankruptcy, sought to pursue the claim. He argued that the bankruptcy trustee, with actual knowledge of the claim, failed to pursue it and, thereby, abandoned it by operation of law. The First Circuit's reasoning, in rejecting the argument there, is equally pertinent to our rejection of Bowie's argument here.

> *[A]ppellants essentially contend that the state court action was "abandoned" to appellants by operation of law,* within the meaning of 11 U.S.C. § 554(c), *because the Trustee had actual knowledge of the state court action when the report of no assets was filed.* In support of finding abandonment by operation of law, *appellants also point to their claimed oral disclosure* as evidencing a lack of fraud and to the Trustee's zero-valuation.
>
> Despite appellants' persistent claims, we agree with the district court that *the alleged discussion with the Trustee, even if true, has no bearing on the outcome of this appeal.* The law is abundantly clear that *the burden is on the debtors to list the asset* and/or amend their schedules, *and that in order for property to be abandoned by operation of law pursuant to 11 U.S.C. § 554(c), the debtor must formally schedule the property* pursuant to 11 U.S.C. § 521(1) before the close of the case.
>
> *What matters here is not what the appellants or their counsel said, it is what they did or, rather, failed to do.* The state court action was not scheduled as an asset at any time during the bankruptcy proceedings. *There is simply no such concept of "assumed abandonment,"* which is essentially what appellants ask us to find.

70 F.3d at 186 (emphasis supplied).

### What Happens to an Unpursued Claim When Its Ownership Is in Apparent Limbo?

At first glance there does, indeed, seem to be an ownership vacuum with respect to an unscheduled and unpursued cause of action once a bankruptcy estate has been closed.

There is a surface plausibility in a debtor's argument that, by process of elimination, he is the only remaining party who could own and pursue a claim, lest the claim be deemed to have lapsed. The case law establishes, however, that the ownership of a non-abandoned asset may remain dormant in a bankruptcy estate even after the estate has been closed and the trustee has been discharged. *Stein v. United Artists Corp., supra,* firmly holds that the ownership of an unabandoned asset will lie dormant rather than revert to the debtor.

Stein seeks to sue in custodia legis for the benefit of creditors, *contending that until a trustee is again appointed, the bankrupt is the only existing entity who may hold title to the asset.* This misconceives the nature of the bankruptcy estate. *Property of the bankrupt remains* in custodia legis *in the bankruptcy court* during the period in which no trustee has been appointed and *after the discharge of the trustee. Title may remain dormant, in the estate, until the bankruptcy court again appoints a trustee* as enforcing guardian. Without petitioning the bankruptcy court, Stein cannot resurrect the estate to proceed in custodia legis.

691 F.2d at 893. See also *United States v. Ivers,* 512 F.2d 121, 124 (8th Cir.1975); *Stanolind Oil & Gas Co. v. Logan,* 92 F.2d 28, 31 (5th Cir.1937).

 It is undisputed that the mere fact that a bankruptcy estate is closed does not operate as an abandonment of a cause of action that has not been pursued and does not result in an automatic reversion of ownership to the original debtor. Judge Rodowsky clearly articulated this principle for the Court of Appeals in *Adams v. Manown,* 328 Md. 463, 478, 615 A.2d 611 (1992).

*Property which has not been scheduled is not abandoned by the trustee simply because the estate is closed.* This principle has long been settled. *First Nat'l Bank of Jacksboro v. Lasater,* 196 U.S. 115, 25 S.Ct. 206, 49 L.Ed. 408 (1905), involved the debtor's post bankruptcy action on an unscheduled usury claim on which a state court judgment

for the debtor had been entered. Speaking in terms of the theory of the then Bankruptcy Act under which a trustee elected whether to take property, and after recognizing that the bankrupt could assert title to abandoned property, the Court said:

"But *that doctrine can have no application when the trustee is ignorant of the existence of the property, and has had no opportunity to make an election. It cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate in bankruptcy has been finally closed up, immediately thereafter assert title to the property on the ground that the trustee had never taken any action in respect to it.* If the claim was of value (as certainly this claim was, according to the judgment below), it was something to which the creditors were entitled, and this bankrupt could not, by withholding knowledge of its existence, obtain a release from his debts, and still assert title to the property."

(Emphasis supplied).

*Jeffrey v. Desmond,* 70 F.3d 183, 186 n. 3 (1st Cir.1995), also speaks clearly to the same effect.

[B]y operation of 11 U.S.C. § 554(c) and (d), *any asset not properly scheduled remains property of the bankrupt estate, and the debtor loses all rights to enforce it in his own name. Vreugdenhill v. Navistar Int'l Transportation Corp.,* 950 F.2d 524, 526 (8th Cir.1991) (*Chapter 7 debtor who failed to schedule potential claim cannot prosecute the claim after emerging from bankruptcy* ).

(Emphasis supplied).

### The Law Suit Was Never Abandoned by the Trustee

Following full argument at the hearing on the motion for summary judgment on January 12, 2004, Judge Allison ruled that the present cause of action had vested in the bankruptcy estate and had never been abandoned by it.

The plaintiff wishes the Court here to find that there was abandonment because the trustee was aware—made aware orally of the claim. However, these claims were not scheduled. Clearly if they were not scheduled, the creditors did not have notice of the claims. And that is a significant issue in a bankruptcy proceeding; therefore, the court perceives that there was no abandonment.

We see no error in that ruling.

### A Wild Shot in the Dark: Was the Cause of Action Exempt from the Bankruptcy Estate?

As little more than a throwaway subcontention, Bowie briefly maintains that his law suit against Rose Shanis was exempt from being included in his bankruptcy estate. The contention is twice bereft. It is flawed both substantively and procedurally.

■ Substantively, Bowie seeks to invoke Maryland Code, Courts and Judicial Proceedings Article, § 11–504(b)(2), which creates a limited exemption from execution on a judgment. The section provides:

(b) In general—The following items are exempt from execution on a judgment:

(2) *Money payable in the event of sickness, accident, injury, or death of any person,* including compensation for loss of future earnings. *This exemption includes* but is not limited to *money payable on account of judgments,* arbitrations, compromises, insurance, benefits, compensation, and relief. Disability income benefits are not exempt if the judgment is for necessities contracted for after the disability is incurred.

(Emphasis supplied).

Even if § 11–504(b)(2) were applicable to bankruptcy proceedings, a subject which is mercifully unnecessary for us to explore at this time, it would be limited to a recovery for a personal injury, not a recovery for an injury to one's property. Bowie's five-count complaint against Rose Shanis was for 1) fraud, 2) negligence, 3) breach of contract, 4) conversion and 5)

interference with a contract. The entire suit arose out of the disputed repossession of two automobiles. There was no remote suggestion that the repossession of the automobiles had caused Bowie to suffer any "sickness, accident, injury, or death" and he sought no compensation therefor. The suit was quintessentially for an injury to property and not for personal injury.

■ Procedurally, Bowie's exemption contention is equally feckless. 11 U.S.C. § 522(b) and Bankruptcy Rule 4003(a) and (b) set out the very specific conditions that must be satisfied for an exemption of property from a bankruptcy estate to be valid. An asset may be exempted from a bankruptcy estate only if

1. the debtor lists the property as a claimed exemption on the schedule of assets;
2. no party in interest successfully objects; and
3. a statute authorizes the exemption.

In this case, Bowie never listed his cause of action against Rose Shanis as a claimed exemption, either when he initially filed for bankruptcy or as an amendment at any time thereafter. On this issue, Judge Allison ruled:

> Moreover, *this is not a claim for personal injury and no claims were listed as exempt under the bankruptcy schedule.* Furthermore, there does not appear to be any statute that would authorize such exemption. *Simply they weren't listed, so they are not authorized as exempt.*

(Emphasis supplied). Again, we see no error in that ruling.

### Was the Failure of the Court, Sua Sponte, To Stay the Proceedings An Abuse of Discretion?

■ Bowie's secondary contention assumes the correctness of the grant of summary judgment against his right to maintain in his own name the suit against Rose Shanis, but nonetheless challenges the final disposition of the case. The challenge, however, is a very allusive one. Bowie has the glimmer of an idea but no well-calibrated procedural strategy.

Alert to the unusual, indeed unique, form of relief crafted by the Court of Appeals in *Adams v. Manown, supra,* under extremely unusual circumstances, Bowie has decided that, rather than lose the case outright, it would be better to have the bankruptcy estate reopened and the possible law suit against Rose Shanis officially referred to a newly appointed bankruptcy trustee. The new trustee could then decide whether to pursue the suit or to abandon it. If the latter, the suit would then revest in Bowie, who would thereby have lived to fight another day. In the face of the firing squad, Bowie is simply trying to buy time.

Bowie's problem is that, with the full opportunity to do so over months if not years, he never took a single step to have the bankruptcy estate reopened and to have the very existence of the potential asset brought to the attention of its rightful owner, the trustee in bankruptcy. From the very moment that Bowie filed for bankruptcy on December 21, 2001, and deliberately failed to schedule the cause of action, he was alert to the risk of his present problem. That was a period of two years and one month prior to Judge Allison's decision. In all of that time, Bowie did nothing.

From the closing of the bankruptcy estate on April 23, 2002, Bowie was alert to the risk that the law suit might lapse if he made no effort to have the bankruptcy estate reopened so that the asset that had been hidden could be revealed and acted upon in one way or another. That was a period of one year and nine months prior to Judge Allison's decision. In all of that time, Bowie never moved to have the closed bankruptcy estate reopened. It was, moreover, during that period, on November 3, 2003, that the three-year statute of limitations, measured from November 3, 2000, ran out.

Bowie was formally put on notice of Rose Shanis's defense that the dormant bankruptcy estate rather than he owned the cause of action when Rose Shanis filed its Memorandum of Law in Support of its Motion for Summary Judgment on December 2, 2003. That was six weeks prior to Judge Allison's decision. Coincidentally, the statute of limitations on the filing of the cause of action had already run. During all of

that time, Bowie never moved to have the bankruptcy estate reopened.

When the hearing on the summary judgment motion was being conducted on January 12, 2004, Bowie never asked for an extension of time so that he might petition for a reopening of the bankruptcy estate. Even after Judge Allison rendered her decision, Bowie never moved to have its effect stayed so that he might petition for a reopening of the bankruptcy estate.

Bowie simply relies, on appeal, on the argument that Judge Allison, *sua sponte*, should have done for him those things he could have done but never did for himself. Although at the hearing on summary judgment, Bowie did briefly allude to *Adams v. Manown* in the course of his argument, he never, either at that hearing or after the decision was rendered, moved to have Judge Allison take the initiative with respect to the possible reopening of the bankruptcy estate.

Even as of this appeal, Bowie's argument is vaporous to the point of being evanescent. Even now, Bowie does not tell us precisely what he wanted Judge Allison to do, lest she be guilty of an abuse of discretion. Did he want her to defer making her final decision until he had had yet additional time to petition for a reopening of the bankruptcy estate? He never asked her to do so. Did he want her to stay the effect of her decision until he had that additional opportunity? He never asked her to do so. Did he want her to pick up the phone and start exploring the possibilities herself? He never asked her to do so. And yet he claims that she abused her discretion.

We hold that Judge Allison, in deciding the only motion that was submitted to her for decision, did not abuse her discretion. Other than *Adams v. Manown,* we know of no case, in Maryland or elsewhere, in which a court has ever assumed the *sua sponte* responsibility of petitioning a bankruptcy court to reopen a closed bankruptcy estate.

When a debtor attempts to pursue a cause of action that no longer belongs to him but to a dormant bankruptcy

estate and summary judgment, for that reason, is granted against him, that ends the matter. The court does not undertake, *sua sponte,* to have the closed bankruptcy estate reopened. If such a course of action is to be pursued, it is the responsibility of the debtor to do so. *Krank v. Utica Mutual Insurance Co.,* 109 B.R. 668, 669 (E.D.Pa.), *aff'd,* 908 F.2d 962 (3rd Cir.1990) (*"[T]he debtor must petition the bankruptcy court* to reopen proceedings to allow that court to decide whether the trustee should enforce the claim for the benefit of creditors or abandon it.") (Emphasis supplied); *Stein v. United Artists Corp.,* 691 F.2d 885, 893 (9th Cir.1982) ("Without petitioning the bankruptcy court, Stein cannot resurrect the estate."); *Jeffrey v. Desmond,* 70 F.3d 183 (1st Cir.1995); *Vreugdenhill v. Navistar International Transportation Corp.,* 950 F.2d 524 (8th Cir.1991).

The disposition in *Adams v. Manown* was *sui generis.* As the two dissenting judges characterize the decision, 328 Md. at 483, 615 A.2d 611:

The majority in the instant case, in order to reach what it deems a proper result, takes action, which in kindness to [our] colleagues [we] will only characterize as unique and unprecedented.

Before turning to an examination of the extreme circumstances that occasioned the unusual disposition in *Adams v. Manown,* a preliminary observation is called for about the abuse of discretion standard. If *Adams v. Manown* raised the discretionary ceiling to a new height, by no conceivable stretch of the imagination did that elevated ceiling suddenly become a new floor beneath which discretion could no longer sink. Because Judge Allison might have done what *Adams v. Manown* did without abusing her discretion does not imply that she was compelled to do so in order to avoid abusing her discretion. For Bowie to suggest that the discretionary ceiling is, *ipso facto,* the discretionary floor is ludicrous. It would, if true, destroy the very concept of a deferential abuse of discretion standard of appellate review.

Two highly unusual factors set *Adams v. Manown* apart from this case (and from virtually all other bankruptcy cases)

and help to explain why the Court of Appeals stretched as it did to fashion its disposition in that case. Until the actual filing of the opinion of the Court of Appeals, *Adams v. Manown* was not a bankruptcy case. The fact that the plaintiff, Adams, had once been in bankruptcy came out at trial, but its only significance was the bearing it had on a completely different issue.

Adams, who was coincidentally a discharged Chapter 7 debtor, sued the defendant, Manown, to recover funds he had loaned to the defendant and which had never been repaid. The jury awarded Adams $43,000. At trial Manown had relied on the defense that Adams had "unclean hands." At issue was the question of whether the "clean hands" doctrine applied to a suit at law. No bankruptcy issue ever surfaced at the trial. The Court of Special Appeals reversed the judgment in Adams's favor, holding that the "clean hands" doctrine did apply at law. 89 Md.App. 503, 598 A.2d 821 (1991). The opinion of this Court had no occasion even to consider any bankruptcy issue.

The Court of Appeals granted certiorari to Adams on the "clean hands" issue. Neither the briefs nor the oral argument before that Court raised any issue involving bankruptcy law. In the course of the litigation over the "clean hands" doctrine, it was factually developed that Adams had his potential cause of action against Manown before he went into bankruptcy, although he did not actually file the claim until after he had been discharged from bankruptcy. It was also developed that he had intentionally not listed the existence of the potential claim as an asset of the bankruptcy estate.

To the great chagrin of the dissenting judges, the Court of Appeals eschewed making a decision on the basis of the "clean hands" doctrine and, instead, held against Adams on the ground that he was not the real party in interest. The majority opinion held that the owner of the cause of action was the closed bankruptcy estate rather than Adams.[1]

---

1. The dissent, 328 Md. at 483–84, 615 A.2d 611, criticized the unannounced shifting of doctrinal focus.

That brings us to the second unusual circumstance that sets *Adams v. Manown* apart from the overwhelming majority of bankruptcy cases involving this issue of who owned a cause of action. *Adams v. Manown* involved a "bird in the hand" and not one still "in the bush." A judgment for $43,000 against Manown had actually been rendered by the trial court and had been affirmed by both appellate courts. That lawsuit was no mere will-of-the-wisp that might or might not have substance. That was a $43,000 asset *in esse* and not merely *in potentia.* That, moreover, was $43,000 that rightfully belonged to someone, if only the deserving party could be found. The Court of Appeals was loath to give the $43,000 to an undeserving party.

By raising cries of unclean hands and *in pari delicto,* Manown has successfully presented this case as if the only alternatives were either to give Adams the benefit of his fraud or Manown the benefit of a windfall. What has become obfuscated through two levels of courts is that *those who are entitled to benefit from the judicial determination of Manown's indebtedness to Adams are the creditors of Adams.* His trustee in bankruptcy is the real party in interest in the instant case. It is not too late to apply and carry out the correct analysis.

328 Md. at 477, 615 A.2d 611 (emphasis supplied).

In explaining why, in *Adams v. Manown,* it had been necessary to reach out in order to get an asset actually in hand to the creditors to whom it rightfully belonged, the Court of Appeals in *WinMark v. Miles and Stockbridge,* 345 Md. 614, 627, 693 A.2d 824 (1997), characterized the dilemma it had faced.

Indeed, there, liability of the defendant in the civil action to the discharged bankrupt had been determined by judgment.

One of the first things that makes this unusual is that the issue upon which the Court decides this case was never raised or discussed in the trial court; never raised, briefed, or argued in the Court of Special Appeals; and never raised by the parties, briefed, or argued in this Court. Indeed the first time either litigant will have any opportunity to learn of this issue will be when they read the opinion of this Court.

*To the extent that the judgment was collectible, extinguishing it* by applying the clean hands doctrine *would have resulted in a windfall to the judgment debtor and would have deprived the bankrupt's creditors of an asset from which they should have benefited.*

(Emphasis supplied).

*Adams v. Manown* acknowledged that, in both regards, it was dealing with highly "unusual circumstances."

Under the unusual circumstances of the instant case *it would not be in the interest of justice to vacate the judgment and dismiss the claim.* Rather, substitution of the real party in interest is appropriate.

328 Md. at 480–81, 615 A.2d 611 (emphasis supplied).

In this case, unlike *Adams v. Manown,* the battle between Bowie and the bankruptcy estate over the ownership of the cause of action was no stealth issue that caught all parties by surprise. It was at all times the primary and high profile question being litigated both before the trial court and before us. In this case, unlike *Adams v. Manown,* there was no hard asset actually in hand, crying for distribution to the creditors. There was a yet unpursued claim of dubious merit that may, in terms of being refiled by a newly appointed trustee, already have been barred by the statute of limitations.

Judge Allison reasoned that *Adams v. Manown* was an unusual resolution resorted to by the Court of Appeals because of "an exceptional set of circumstances" and that it by no means established a precedent that trial courts were thereafter universally bound to follow in run-of-the-mill cases.

Moreover, *the Adams decision is one from an exceptional set of circumstances. It is not applicable here. The circumstances there were exceptional.* It would be equally as [exceptional] were the appellate courts to put on the trial courts [in] the first instance, the responsibility for running a plaintiff's claims past the bankruptcy trustee in the first instance.

I don't believe that that is what *Adams* [re]presents in the [ ]usual course of litigation. [T]here were exceptional circumstances there.

For all these reasons, the Court is granting the defendant's motion for summary judgment.

(Emphasis supplied).

We do not find that ruling to have been an abuse of the broad discretion entrusted to trial judges. On the ultimate issue, we affirm the grant of summary judgment in favor of the appellee.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**