944 A.2d 509

**Kevin WILSON–X**

**v.**

**DEPARTMENT OF HUMAN RESOURCES, Baltimore City Office of Child Support Enforcement ex rel. Yasmin Patrick.**

**No. 80 Sept. Term, 2007.**

Court of Appeals of Maryland.

March 14, 2008.

668

Gloria Virginia brown, Baltimore, for Appellant.

Julia Doyle Bernhardt, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore), on brief, for Appellees.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, JJ., and ALAN M. WILNER and DALE R. CATHELL, JJ. (Retired, specially assigned).

ALAN M. WILNER, Judge (Retired, specially assigned).

Appellant, Kevin Wilson-X, is upset at an order of the Circuit Court for Baltimore City directing him to pay $50 a month in child support. He complains that his only source of income, from which the child support would have to be paid, is in the form of Supplemental Security Income payments (SSI) he receives from the Social Security Administration and that, under both State and Federal law, those payments may not be counted as income for purposes of mandated child support. He thus asks that we reverse the child support order.[1] Because the issues raised by appellant that go to the validity of the child support order are not properly before us, we shall deny his request for relief.

## BACKGROUND

What occurred in the Circuit Court needs to be considered in light of the statutory regime that governs the setting of child support in Maryland. The heart of that regime, embodied in Maryland Code, § 12–202(a) of the Family Law Article (FL), consists of (1) the requirement that, in any proceeding to establish or modify child support, the court must use the child

---

1. The two questions raised in appellant's brief are:

[1] "Whether ordering child support, within the $20–$150 range permitted under Md. Code Ann Family Law Article, § 12–204(e) for those parents with combined incomes of less that $850.00, was proper when the Appellant's primary source of income proves Supplemental Social Security Income ('SSI'), federally allocated money specifically set aside under 42 U.S.C. § 1381 *et seq*, to provide a minimum level of support to those both indigent and disabled."

[2] "Whether the mandate that courts deviate from the guidelines only after providing careful factual analysis is so strong that the motions judge denial of reconsideration amounted to reversible error, particularly given that the Appellant lives on means-tested income and that the judge considered financial assistance provided by third parties to the Appellant in issuing his decision."

support guidelines set forth in FL § 12–204, to the extent they are applicable, and (2) the creation of a rebuttable presumption that the amount of child support that would result from application of those guidelines is the correct amount to be awarded.

The child support guidelines are based on the "combined adjusted actual income" of the parents. The term "actual income" is defined very broadly in FL § 12–201(b). Section 12–201(b)(5), however, excludes from the definition "benefits received from means-tested public assistance programs," including SSI. Those kinds of benefits may not, therefore, be considered as "actual income" when determining child support under the guidelines. "Adjusted actual income" is calculated by deducting from "actual income" preexisting reasonable child support obligations actually paid, alimony or maintenance obligations actually paid, and, for purposes of this case, the actual cost of providing health insurance for a child for whom the parents are jointly and severally responsible. *See* § 12–201(c).[2]

The format of the guidelines is to establish, first, the amount of "basic child support obligation," which is done through a table set forth in FL § 12–204(e). That table specifies a monthly dollar amount based on the combined adjusted actual income of the parents and the number of children involved. Where the combined adjusted actual income of the parents is between 0 and $850 per month, the table sets the basic child support obligation as "$20–$150 Per Month, Based on Resources And Living Expenses Of Obligor And Number Of Children Due Support." The basic child support obligation, as established from the table, is then divided between the parents in proportion to their adjusted actual incomes. *See* FL § 12–204(a)(1). The custodial parent

---

**2.** By 2007 Md. Laws, chs. 35 and 36, the provision deducting the cost of health insurance from actual income was repealed, but that cost was added to the basic child support obligation and divided between the parents in proportion to their adjusted actual incomes. Those laws became effective October 1, 2007, which was after the child support order entered in this case.

is presumed to spend that parent's total child support obligation directly on the child. With exceptions not relevant here, the non-custodial parent's child support obligation is to be satisfied by payments to the non-custodial parent. *See* FL § 12–204(*l*).

This case began with a petition filed by the State's Attorney in February, 2006, to establish that appellant was the father of a minor child, Shallah, determine who should have custody of the child, and establish appellant's child support obligation. The child, born in 1996, apparently lived with her mother and appellant until the couple separated in 2005. After reviewing the results of a blood test which indicated a 99.99% probability that he was the father, appellant decided not to contest paternity, and, as appellant did not then contest custody, the only issue was child support. At a hearing held before Judge Pierson on June 13, 2006, it was essentially stipulated that appellant was receiving SSI benefits. A document in the record from the Social Security Administration showed the monthly SSI benefit to be $603. Counsel for the State acknowledged that SSI income could not be considered in the calculation of actual income but argued that, under the guidelines, an award of between $20 and $150 was permissible where the income was between $100 and $800.[3] Counsel asked for an award of $50, noting that that amount was acceptable to the mother.

Appellant testified that he could not afford to pay any amount of child support. He said that his rent was $568 a month, his telephone bill was $56 per month, that he was on nine medicines, four of which were to treat his HIV condition, and that his "co-pay" for those medicines was $5, apparently per medicine. He gave no indication of what his other living expenses were—food, clothing, heat and electricity, etc. Appellant said that he last worked about eight or nine years ago and that he lived alone. When the court noted that his necessary expenses exceeded his SSI benefits and suggested

---

3. As noted, the guidelines actually provided for an award of $20 to $150 where the combined adjusted actual income was between 0 and $850.

that he must have some other source of income, appellant acknowledged that he got money from his mother from time to time, although not recently. The child's mother, who was working part time and had income of her own, testified that appellant was living with a new girlfriend who received welfare benefits and was helping him pay the rent. Appellant denied that was the case. Having heard the evidence, the court concluded that appellant's testimony regarding his ability "is not supported by the facts that he's demonstrated because it's clear that he has some means beyond those that he has actually produced to the court" and that $50 "is a reasonable amount of support." Upon that finding, the court entered a judgment that determined appellant to be the father, awarded custody of the child to the mother, and ordered appellant to pay $50 per month in child support.

No appeal was taken from that June 13 order. On July 13, 2006, appellant, acting *pro se*, filed a motion for reconsideration in which he asked the court to "[t]ake into consideration [appellant's] limited income and current established Bills and reduce set amount of child support." He also asked that the court establish visitation rights and award joint custody. Counsel from a non-profit organization entered her appearance on behalf of appellant and, in a request for hearing, averred that appellant's sole source of support was the SSI benefit, which may not be counted as income, that he was totally disabled, and that he was unable to supplement his income. The essence of her argument, articulated in a memorandum in support of the motion for reconsideration, was that "if an individual's only income with which to pay child support is SSI, and the person cannot work, the court runs afoul of federal authority in ordering child support because it forces federal money to be used for a purpose other than that for which it was initially allocated, that is the survival of a disabled individual."

Neither the motion for reconsideration nor counsel's written or oral argument in support of it alleged any new or changed circumstance, not considered by Judge Pierson, that would warrant a reduction in child support, but only that the court

had erred in establishing the $50 amount. At a hearing before Judge Doory in March, 2007, appellant noted that the monthly SSI benefit had been increased to $623, but claimed that was "all the money he has" and that the law prohibited the court from imputing the SSI benefit as income. Appellant contended that Judge Pierson had ordered the $50 based on a finding that appellant lived with another individual who contributed to the rent, which freed up more of his income to pay the child support, and urged that it was legally inappropriate for the court to consider that person's contribution because she had no obligation to support appellant's child.

The State responded that when a court applies the guidelines, it ordinarily does not consider the obligor's general expenses; the guidelines are based on gross income, not expenses. When the combined adjusted actual income falls below a minimum amount, however—when it is between 0 and $850—the guidelines require that the court consider the resources and living expenses of the obligor, and *that*, in the State's view, is what Judge Pierson did. On the evidence presented, he concluded that appellant had sufficient resources to pay $50 per month. Judge Doory, having apparently read the transcript of the hearing before Judge Pierson, which is in the record, decided not to interfere with Judge Pierson's decision and denied the motion.

This appeal was then filed, within 30 days after denial of the motion for reconsideration but long beyond the time allowed to appeal from Judge Pierson's order. We granted *certiorari* on our own initiative, before any meaningful proceedings in the Court of Special Appeals.

### DISCUSSION

#### Standard of Review

The first dispute between the parties is over the standard of review to be applied. Appellant recognizes that the only timely appeal was from the denial of his motion for reconsideration, that the ruling on a motion for reconsideration is ordinarily discretionary, and that the standard of

review in such a circumstance is whether the court abused its discretion in denying the motion. Relying principally on *Child Support v. Shehan,* 148 Md.App. 550, 813 A.2d 334 (2002) and *Gerland v. Gerland,* 703 A.2d 70 (Pa.Super.1997), however, appellant contends that, when the issues presented are of statutory interpretation that have not previously been decided—issues of first impression—the court should apply a *de novo* standard of review. The State, of course, argues otherwise.

Neither *Child Support* nor *Gerland* support a departure from the abuse of discretion standard in this case. In both of those cases, there was a timely appeal from the judgment itself. In *Child Support,* the trial court had vacated a child support order because of a subsequent cohabitation between the parents, and it did so in a proceeding of which the custodial parent had not been given notice and did not appear. That, the Court of Special Appeals held, was error. In *Gerland,* a custodial parent complained about the trial court's refusal to require the non-custodial parent to pay private school tuition for the children and to include the children under his health insurance policy. The appellate court applied an abuse of discretion standard with respect to the tuition expenses and found no abuse, but it concluded that a Pennsylvania statute required the defendant to provide health insurance. The trial court's failure to implement that statutory requirement was therefore legal error, warranting a remand.

■ This Court has recognized that trial judges do not have discretion to apply inappropriate legal standards, even when making decisions that are regarded as discretionary in nature. In *Pasteur v. Skevofilax,* 396 Md. 405, 433, 914 A.2d 113, 130 (2007), we confirmed that "a failure to consider the proper legal standard in reaching a decision constitutes an abuse of discretion." *See also Ehrlich v. Perez,* 394 Md. 691, 708, 908 A.2d 1220, 1230 (2006), citing *LeJeune v. Coin Acceptors, Inc.,* 381 Md. 288, 301, 849 A.2d 451, 459 (2004) and *Alston v. Alston,* 331 Md. 496, 504, 629 A.2d 70, 74 (1993) for the proposition that "even with respect to a discretionary matter,

a trial court must exercise its discretion in accordance with correct legal standards." The standard of review remains abuse of discretion. The relevance of an asserted legal error, of substantive law, procedural requirements, or fact-finding unsupported by substantial evidence, lies in whether there has been such an abuse.

### *Whose Discretion Is At Issue?*

There were two significant discretionary rulings made by the trial court in this case. The first, made by Judge Pierson, set the amount of child support at $50 per month. The second was that of Judge Doory, who, by holding a hearing and listening to appellant, did "reconsider" Judge Pierson's order, but, in the en d, refused to disturb it.

The complaint with respect to Judge Pierson's decision is that the setting of child support at $50 a month rested on the unlawful consideration of the SSI benefits received by appellant as income to him and the wrongful consideration of the girlfriend's contribution to some of appellant's living expenses. Had a timely appeal been filed from that decision, those complaints could have been addressed—whether, in fact, Judge Pierson *did* regard the SSI benefits as income, whether he *did* consider the girlfriend's contribution, and whether, if so, it was error for him to do so. The problem, of course, is that there was no timely appeal from Judge Pierson's order, so even if he *did* wrongfully regard the SSI payments as income and wrongfully consider the girlfriend's contribution to living expenses, those issues are not before us.

The only issue properly before us is whether Judge Doory abused his discretion in refusing to vacate the $50 child support order, and we are not persuaded that he did. The record before Judge Doory could properly have led him to conclude that Judge Pierson did *not* count the SSI benefit as income. The State conceded that it was not income, and Judge Pierson was obviously aware of the statute that precludes consideration of such benefits in determining actual income. What Judge Pierson apparently relied on were the

statutory guidelines themselves, which expressly permit a child support award of up to $150, even when there is 0 actual monthly income, depending on "Resources And Living Expenses Of Obligor And Number Of Children Due Support." Based on appellant's own testimony, part of which he did not credit, Judge Pierson concluded that appellant must have resources other than what he claimed, and, indeed, there was some evidence that he *did* have other resources.

The question facing Judge Doory was not whether he would have reached the same conclusion as Judge Pierson, but only whether that conclusion was so manifestly wrong and unjust that failure on his part to vacate the award would constitute an abuse of the wide discretion that attaches to rulings denying motions to vacate existing judgments, even those not yet enrolled. We have defined "abuse of discretion" in a variety of ways, all of them setting a very high threshold. In *Schade v. Board of Elections,* 401 Md. 1, 34, 930 A.2d 304, 323–24 (2007), quoting from several earlier cases, we defined abuse as occurring when the discretion was "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons," or when "no reasonable person would take the view adopted by the [trial] court." In *Touzeau v. Deffinbaugh,* 394 Md. 654, 669, 907 A.2d 807, 816 (2006), quoting *Jenkins v. State,* 375 Md. 284, 295–96, 825 A.2d 1008, 1015 (2003), we said that abuse occurs when the judge "exercises discretion in an arbitrary or capricious manner or when he or she acts beyond the letter or reason of the law." Citing *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 312, 701 A.2d 110, 118–19 (1997), we added in *Touzeau* that abuse may be found "when the court acts 'without reference to any guiding rules or principles'" or where the ruling under consideration is "'clearly against the logic and effect of facts and inferences before the court,' or when the ruling is 'violative of fact and logic.'" *Touzeau,* 394 Md. at 669, 907 A.2d at 816. Judge Doory's ruling does not even approach any of those standards.

ORDER DENYING MOTION FOR RECONSIDERATION AFFIRMED, WITH COSTS.