REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 49

September Term, 2014

---

CINDY L. SCHLOTZHAUER

v.

KEVIN MORTON, JR., ET AL.

---

Meredith,
Arthur,
Leahy,

JJ.

---

Opinion by Arthur, J.

---

Filed: July 30, 2015

This appeal concerns an intersection of federal bankruptcy law and Maryland civil procedure. The appeal specifically concerns the identity of the real party in interest and the effect of the statute of limitations, including the doctrine of relation back, when a person has been divested of the right to pursue a tort claim because of a bankruptcy filing, but later reacquires that right by operation of bankruptcy law.

When a person files for protection from creditors under federal bankruptcy law, all of the person's property, including personal injury claims, become the property of the bankruptcy estate. *See* 11 U.S.C. § 541(a); *see also Adams v. Manown*, 328 Md. 463, 477 (1992); *Bowie v. Rose Shanis Fin. Servs., LLC*, 160 Md. App. 227, 235 (2004); *Pacific Mortgage and Inv. Group, Ltd. v. Horn*, 100 Md. App. 311, 319 (1994). Those rights become the property of the estate even if the person intentionally, inadvertently, or innocently fails to disclose them to the trustee, the bankruptcy court, and the creditors. *See Adams*, 328 Md. at 478; *Bowie*, 160 Md. App. at 246-47.

Generally, the bankruptcy trustee alone may assert that person's rights, including the right to pursue a tort claim for personal injuries, unless the trustee abandons the rights (*see* 11 U.S.C. § 554; *Horn*, 100 Md. App. at 319-21) or the bankruptcy court declares them to be exempt from creditor claims. 11 U.S.C. § 522(b); *Bowie*, 160 Md. App. at 249. If the rights have not been abandoned or exempted, the bankruptcy trustee retains the sole right to assert them even after the bankruptcy court has closed the bankruptcy case and granted the debtor a discharge. *See, e.g.*, *Adams*, 328 Md. at 478; *Bowie*, 160 Md. App. at 246-47.

In this case, appellant Cindy Schlotzhauer filed for bankruptcy protection a few months after she suffered personal injuries in an automobile accident. In her bankruptcy filings, however, Schlotzhauer neither disclosed her personal injury claim nor asserted that it was exempt from the claims of her creditors. Consequently, her bankruptcy trustee did not abandon the claim, and the court did not declare it to be exempt. Instead, even after the bankruptcy court discharged her debts and closed her case, the claim remained the property of her estate, which her trustee alone could assert.

After emerging from bankruptcy, Schlotzhauer asserted the personal injury claim in the Circuit Court for Queen Anne's County. Her adversaries, appellees Kevin Morton Jr. and Uni-Select USA, Inc. (collectively "Uni-Select"), moved for summary judgment on the ground that she had no right to assert the claim because it belonged to her bankruptcy trustee. Schlotzhauer responded by promptly returning to the bankruptcy court, reopening her case, disclosing the personal injury claim, and obtaining a ruling that the claim was exempt from the claims of her creditors and had been revested in her.

Nonetheless, on the same day that the bankruptcy court docketed the ruling in which it declared the claim to be exempt and to have been revested in Schlotzhauer, the circuit court, which was unaware of the bankruptcy court's decision, granted Uni-Select's motion for summary judgment. In a motion to alter or amend, Schlotzhauer apprised the circuit court both of the bankruptcy court's decision and of a subsequent decision in which the bankruptcy court ruled that the personal injury claim had been revested in her

-2-

by operation of federal bankruptcy law before she even commenced this case.

After the circuit court denied the motion to alter or amend, Schlotzhauer took this timely appeal.

**QUESTION PRESENTED**

Schlotzhauer asks this Court to consider five interrelated questions, of which it is necessary only to consider one: Did the circuit court err in denying Schlotzhauer's motion to alter or amend the court's judgment?  Because we answer that question in the affirmative, we reverse the judgment.[1]

---

[1] Schlotzhauer's brief presented the questions in the following form:

1.  Did the Circuit Court err in not staying the action pursuant to the Court of Appeal's directions in Adams v. Manown, 328 Md. 463[,] 615 A.2d 611 (Md. 1992) for Bankruptcy Court evaluation and resolution of the bankruptcy issues?

2.  Did the Circuit Court err in refusing to accept the Bankruptcy Court's acceptance of the Appellant's innocent error and decreeing nunc pro tunc the effectiveness of Appellant's Schedules B and C as of October 6, 2010, more than two (2) years prior to her filing suit?

3.  Did the Circuit Court err in refusing to recognize the Appellant's Complaint when filed by her on December 27, 2012 was proper and that the Queen Anne's County Circuit Court then had subject matter jurisdiction?

4.  Did the Circuit Court err in ruling on the Summary Judgment Motion prematurely?

5.  Did the Circuit Court err in denying the Motion to Alter or Amend?

FACTUAL AND PROCEDURAL HISTORY

**A.      The Underlying Complaint and Initial Bankruptcy Proceedings**

On January 4, 2010, a car driven by Schlotzhauer collided with another vehicle in the parking lot of a post office in Centreville, Maryland.

On October 6, 2010, Schlotzhauer filed a voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Maryland. On the schedules accompanying her petition, Schlotzhauer did not list any potential claim arising from the automobile accident as an asset, nor did she claim an exemption for that asset. On January 19, 2011, the bankruptcy court granted Schlotzhauer a discharge from her debts and closed the case.

Nearly three years after the automobile accident, on December 27, 2012, Schlotzhauer filed a complaint against Uni-Select in Circuit Court for Queen Anne's County. Uni-Select answered and elected for a jury trial. The answer included a general denial of the allegations in Schlotzhauer's complaint and asserted that the complaint failed to state a cause of action upon which relief may be granted, as well as several affirmative defenses.[2]

_____

[2] Although Uni-Select moved for summary judgment on the ground that Schlotzhauer lacked standing, the answer did not include any averment that Schlotzhauer lacked the capacity to sue. *But see* Md. Rule 2-323(f) (requiring an answer to contain certain "negative defenses," including "the capacity of a party to sue or be sued"). If such defenses are "not raised by negative averment, these matters are admitted for the purpose of the pending action." *Id.*; *see also Thomas v. Capital Med. Mgmt. Assocs., LLC*, 189

(continued...)

**B.      Motion for Summary Judgment and Reopening of Bankruptcy Case**

After discovery, which included a deposition of Schlotzhauer both about the merits of the case and her bankruptcy, Uni-Select moved for summary judgment on August 23, 2013. In its motion, Uni-Select asserted that Schlotzhauer had not scheduled her claim in the bankruptcy case and that her bankruptcy trustee had not abandoned it. Uni-Select also asserted that Schlotzhauer's bankruptcy trustee alone could prosecute the claim and that Schlotzhauer had no "standing."

Promptly thereafter, on September 12, 2013, Schlotzhauer moved the bankruptcy court to reopen her Chapter 7 case so that she could file amended schedules that disclosed the personal injury claim and obtain a declaration that the claim was exempt from the claims of her creditors. Uni-Select moved to intervene in the bankruptcy case to oppose the reopening of the case.

Meanwhile, Schlotzhauer opposed Uni-Select's motion for summary judgment and moved the circuit court to stay its decision until the bankruptcy court had ruled.

On October 24, 2013, the bankruptcy court ordered that the bankruptcy case be reopened for the filing of amended schedules of assets. On that same date, Schlotzhauer filed the amended schedules, listing her claim for "personal injury damages" with the value of $1.5 million and claiming that the property was exempt pursuant to section

---

[2] (...continued)
Md. App. 439, 454-58 (2009).

11-504(b)(2) of the Courts and Judicial Proceedings Article.[3] Uni-Select opposed the amended schedules.

Schlotzhauer promptly notified the circuit court that she had reopened the bankruptcy case, and she requested a stay of the circuit court proceedings. On October 29, 2013, the circuit court ordered that Schlotzhauer's motion to stay and Uni-Select's motion for summary judgment would be held *sub curia* for 30 days, "to permit [the] parties to address matters of bankruptcy jurisdiction and to permit [the] parties to supplement their motions[.]" At a motions hearing held on December 5, 2013, Schlotzhauer requested, as an alternative remedy, that the court permit the bankruptcy trustee to be added as a co-plaintiff.

### C.     **The Bankruptcy Court's Initial Ruling**

The bankruptcy court issued its ruling regarding Schlotzhauer's amended schedules at a hearing on January 7, 2014. The court held, first, that Uni-Select lacked standing to object to the amendment of the schedules in Schlotzhauer's bankruptcy case,

---

[3] The bankruptcy code sets forth a list of items that a debtor may exempt from the property of the estate (*see* 11 U.S.C. § 522(b)), but also permits each state to opt out of the federal scheme and to enact a set of exemptions for its own citizens. *In re Dobbins*, 249 B.R. 849, 851 & n.3 (Bankr. D. Md. 2000). Maryland has opted out of the federal scheme. *Id.* n.3; *see* Md. Code (1974, 2013 Repl. Vol., Supp. 2014) § 11-504(g) of the Courts and Judicial Proceedings Article ("CJP"). "[T]herefore Maryland residents who file bankruptcy are limited to the exemptions provided under state statutory law." *In re Dobbins*, 249 B.R. at 851-52. These exemptions include the exemption in CJP section 11-504(b)(2) for "money payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings."

because Uni-Select was not a creditor or otherwise affected by the distribution of the bankruptcy estate. In the absence of any valid objection to the amended schedules, the bankruptcy court concluded that Schlotzhauer's exemption "became allowed 31 days after the Debtor's Amended Schedule C was filed[,]" *i.e.*, on November 26, 2013. "After the allowance of the exemption, [the asset] belonged and belongs to the Debtor."

The bankruptcy court's written order was docketed the next day, January 8, 2014.

### D.    Circuit Court's Summary Judgment Order and Opinion

Although the bankruptcy court had just ruled that Schlotzhauer had reacquired the personal injury claims as of November 26, 2013, and thus had the right to assert them as of that date, the circuit court reached a contrary conclusion on the same day that the bankruptcy court's order was docketed. Unaware of the bankruptcy court's near-simultaneous decision that the claims had been revested in Schlotzhauer, the circuit court granted Uni-Select's motion for summary judgment on the "threshold jurisdictional issue" that Schlotzhauer lacked "standing."

On the merits, the court phrased the issue as: "who owns the cause of action and is entitled to pursue that cause of action to judgment." Relying primarily on *Bowie v. Rose Shanis Financial Services, LLC*, 160 Md. App. 227 (2004), a case in which the plaintiff had neither scheduled his claim, nor requested an exemption, nor obtained a determination that the claim was exempt from creditor claims as Schlotzhauer had, the circuit court reasoned "[t]he Plaintiff's Bankruptcy Estate currently owns this cause [of]

action." The court further reasoned that the mere reopening of the bankruptcy case did not "cure the issue of standing" on its own, but that Schlotzhauer "must wait until the owner of the cause of action," the trustee, "makes a decision whether to pursue that action." The court admitted that Schlotzhauer's request for a stay had "some foundation in common sense," but concluded that a stay was not required.

In a footnote in the final paragraph of the opinion, the court addressed whether to "dismiss the action without prejudice, and then allow the Bankruptcy Estate to pursue the claim." The court reasoned that, because the three-year statute of limitations had already expired, "an amended complaint would be barred at this point." *But see* Md. Rule 2-201 (providing that joinder or substitution of real party in interest has "same effect as if the action had been commenced in the name of the real party in interest").

On the same day that the court issued its opinion and order, Schlotzhauer filed a line, notifying the court that the bankruptcy court had confirmed the exemption and decreed that the claim had been revested in her as of November 26, 2013.

### E. The Reconsideration Motions

In an apparent response to the circuit court's statement that limitations would bar her from asserting her claims unless she could show that she owned her claim when she first filed suit in December 2012, Schlotzhauer asked the bankruptcy court to reconsider its decision that she had reacquired her claims only as of November 26, 2013, the thirtieth day after the court had accepted her amended schedules. She specifically asked the

-8-

bankruptcy court to order that the amended schedules were effective *nunc pro tunc* on January 19, 2011, the date on which she was originally discharged from bankruptcy.

At about the same time, on January 16, 2014, Schlotzhauer moved, pursuant to Maryland Rule 2-534, to alter or amend the order granting summary judgment against her. In the motion, Schlotzhauer asked the court to vacate the summary judgment and to hold the case open until the bankruptcy court had finally resolved the date on which she had reacquired her claim.

## F.    The Bankruptcy Court's Second Decision

On January 24, 2014, before the circuit court ruled on the motion to alter or amend, the bankruptcy court reconsidered its conclusion about the effective date of an exemption contained in a schedule that is filed after the commencement of a bankruptcy case. Quoting *In re O'Brien*, 443 B.R. 117, 131 (Bankr. W.D. Mich. 2011), the bankruptcy court concluded that, "'[r]egardless of when an exemption is subsequently claimed by a debtor in the case, it must relate back' . . . to the date of the petition" – *i.e.*, to the date on which the debtor filed for bankruptcy protection. "Accordingly," the court concluded that "upon the allowance of the exemption" that Schlotzhauer claimed in her amended schedules, "the cause of action revested back to the Debtor and that revesting in law related back to the date of filing of the Petition in this bankruptcy case on October 6, 2010."

In other words, as a matter of federal bankruptcy law, when the bankruptcy court

allowed the exemption that Schlotzhauer had claimed in her amended schedules, it was as though she had owned her claims all along.[4]

With the bankruptcy court's second ruling in hand, Schlotzhauer supplemented her motion to alter or amend. As a consequence of the bankruptcy court's ruling, she argued, the ground for summary judgment no longer existed: the bankruptcy court had determined that she, and not (as the circuit court said) her trustee, owned her claims when she first filed this case.

### G.     The Circuit Court Ruling on the Post-Judgment Motion

At a hearing on February 25, 2014, Uni-Select did not dispute that Schlotzhauer had "reacquired the right to bring this cause of action" through the bankruptcy court. Instead, Uni-Select contended that "she would necessarily have to file a new suit, a separate lawsuit, which would necessarily be barred by the statute of limitations." Uni-Select reiterated its position that the original complaint "was a nullity and [the circuit court] lacked subject matter jurisdiction to do anything with it, other than dismiss it."

On February 27, 2014, the circuit court issued an order stating only that Schlotzhauer's motion to alter or amend the judgment was denied. Schlotzhauer then noted a timely appeal on March 18, 2014.

---

[4] *Accord In re Gentry*, 459 B.R. 861, 864 (Bankr. M.D. Fla. 2011) ("[i]n the case of amended claims of exemption, the amendment relates back to, and is effective as of, the petition date"); *In re Ball*, 201 B.R. 204, 207 (N.D. Ill. 1996); *Christy v. Heights Fin. Corp.*, 101 B.R. 542, 543-44 (C.D. Ill. 1987).

STANDARD OF REVIEW

Maryland Rule 2-534 permits parties to invoke the court's revisory power:

**Motion to Alter or Amend a Judgment – Court Decision**

In an action decided by the court,[5] on motion of any party filed within ten days after entry of judgment, the court may open the judgment to receive additional evidence, may amend its findings or its statement of reasons for the decision, may set forth additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment. . . .

Pursuant to this Rule, the circuit court "has broad discretion whether to grant motions to alter or amend filed within ten days of the entry of judgment," and "[i]ts discretion is to be applied liberally so that a technicality does not triumph over justice." *Benson v. State*, 389 Md. 615, 653 (2005) (citing *Maryland Bd. of Nursing v. Nechay*, 347 Md. 396, 408 (1997)).

An appellate challenge to a court's ruling on a Rule 2-534 motion is typically limited in scope. *Cent. Truck Ctr., Inc. v. Cent. GMC, Inc.*, 194 Md. App. 375, 397 (2010) (quoting *In re Julianna B.*, 179 Md. App. 512, 558 (2008), *vacated*, 407 Md. 657 (2009)). "In general, the denial of a motion to alter or amend a judgment is reviewed by appellate courts for abuse of discretion." *RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 673 (2010) (citing *Wilson-X v. Dep't of Human Res.*, 403 Md. 667, 674-75

---

[5] Within the meaning of this Rule, the phrase "action decided by the court" includes an action disposed of by a grant of summary judgment. *Sieck v. Sieck*, 66 Md. App. 37, 40 n.1 (1986).

(2008)).  "The relevance of an asserted legal error, of substantive law, procedural requirements, or fact-finding unsupported by substantial evidence, lies in whether there has been such an abuse."  *Wilson-X*, 403 Md. at 676.

Nevertheless, a "court's discretion is always tempered by the requirement that the court correctly apply the law applicable to the case."  *Arrington v. State*, 411 Md. 524, 552 (2009); *see In re Adoption/Guardianship No. T97036005*, 358 Md. 1, 24-25 (2000) (abuse of discretion where trial judge's decision with respect to discretionary matter "was based on an error of law"); *Guidash v. Tome*, 211 Md. App. 725, 735 (2013) (abuse of discretion occurs when court "makes a decision based on an incorrect legal premise"); *Brockington v. Grimstead*, 176 Md. App. 327, 359 (2007) ("an exercise of discretion based upon an error of law is an abuse of discretion").

Consequently, in appeals from the denial of a post-judgment motion, reversal is warranted in cases where there is both an error and a compelling reason to reconsider the underlying ruling.  *E.g. Williams v. Hous. Auth. of Baltimore City*, 361 Md. 143, 153 (2000) (holding that it is abuse of discretion not to strike judgment and allow further proceedings where judgment was "based on a clear mistake" later brought to court's attention); *Wormwood v. Batching Sys., Inc.*, 124 Md. App. 695, 700-01 (1999) (holding that circuit court abused discretion in denying motion for reconsideration where appellant brought court's attention to legal error previously made by court); *Garliss v. Key Fed. Savings Bank*, 97 Md. App. 96, 104-05 (1993) (holding that circuit court abused

discretion in denying motion to alter or amend that "should have alerted" hearing judge that movant was entitled to credit against judgment).

When a party requests that a court reconsider a ruling solely because of new arguments that the party could have raised before the court ruled, the court has almost limitless discretion not to consider those argument. *Steinhoff v. Sommerfelt*, 144 Md. App. 463, 484 (2002). By contrast, when a party makes a prompt and timely request that a court reconsider a ruling because of a development that the party could not have raised before the court ruled, the court can and should reconsider its decision. *See*, *e.g.*, *Knish v. Stein*, 347 F. Supp. 2d 682, 685-86 (D. Minn. 2004) (reconsidering dismissal of habeas corpus petition for lack of jurisdiction and deciding petition on merits because of intervening appellate decision that implicitly rejected premise of court's earlier decision); *Morrow v. Harkleroad*, 258 F. Supp. 2d 418, 419 (W.D.N.C. 2003) (amending judgment and opinion to accommodate intervening change in law, which occurred when appellate court vacated earlier opinion on which court had relied); *Quinones-Ruiz v. United States*, 873 F. Supp. 359, 361-62 (S.D. Cal. 1995) (reconsidering grant of summary judgment, and entering summary judgment against party who had prevailed in earlier ruling, because of intervening change in controlling law that occurred when appellate court announced new rule that affected case).[6]

---

[6] Although these cases arise under Fed. R. Civ. P. 59, the pertinent Maryland Rule, Rule 2-534, is "an analog to Federal Rules of Civil Procedure 52(b) and 59(a)," and, in

(continued...)

In the instant case, the circuit court properly exercised its discretion to consider the impact of the bankruptcy court's orders. *See In re Adoption/Guardianship of Joshua M.*, 166 Md. App. 341, 356 (2005) (holding "that Rule 2-534 accords the trial court discretion to consider admissible evidence of facts occurring after the date of entry of judgment when those facts are directly related to relevant facts arising between the date of trial and the date of entry of judgment"). The circuit court scheduled a hearing even though a hearing is typically not required for a motion to reconsider the grant of summary judgment. *See* Md. Rule 2-311(f); *see also Lowman v. Consol. Rail Corp.*, 68 Md. App. 64, 75 (1986). Furthermore, the hearing transcript reflects that the court accepted the evidence of the post-judgment developments and considered the parties' written arguments regarding the effect of the bankruptcy court's decisions. The court specifically directed the parties to address the potential curative effect of the bankruptcy court's orders. Uni-Select did not object to the consideration of "post-judgment" evidence, but instead maintained that the circuit court's ruling was legally correct even in light of the outcome of the bankruptcy proceedings.

Although the circuit court did not elaborate when it denied Schlotzhauer's post-

---

[6] (...continued)
fact, "is more expansive than the federal rules." *Renbaum v. Custom Holding, Inc.*, 386 Md. 28, 44 (2005). The Court of Appeals has "long held that federal caselaw interpreting a Federal Rule of Civil Procedure is persuasive authority for the interpretation of a Maryland Rule patterned after the federal rule." *Phillip Morris USA, Inc. v. Christensen*, 394 Md. 227, 253 (2006).

judgment motion, the circumstances establish that the court credited the argument that Uni-Select was legally entitled to judgment even if Schlotzhauer had been revested with the right to assert her claim as of the date of her bankruptcy petition in 2010. *See Wormwood*, 124 Md. App. at 701 (inferring from comments by court and arguments made by appellee that dismissal and denial of reconsideration rested on resolution of legal question). To the extent that the court's ruling depended upon this purely legal determination, the scope of appellate review necessarily broadens. *See Harrison-Solomon v. State*, 216 Md. App. 138, 146 (2014) (in reviewing denial of motion to alter or amend for overall abuse of discretion, explaining that "[t]o the extent that our decision involves . . . questions of law, our review is *de novo*"); *U.S. Life Ins. Co. of New York v. Wilson*, 198 Md. App. 453, 463-64 (2011) (noting that, even though some arguments were raised on motion for reconsideration of summary judgment order, "[f]or all intents and purposes . . . we are reviewing all aspects of the summary judgment decision *de novo*").

Consequently, the focus of our review shifts. The central question becomes: after the circuit court exercised its discretion to consider the bankruptcy court's rulings concerning when Schlotzhauer reacquired her claim, was the court correct in ruling that Uni-Select was still entitled to summary judgment?

DISCUSSION

### A. As a Matter of Federal Bankruptcy Law, Schlotzhauer Owned the Claim as of the Date of Summary Judgment

A petition for bankruptcy, when filed by a debtor such as Schlotzhauer, "creates an estate . . . comprised of all . . . property," including "all legal or equitable interests of the debtor in property at the commencement of the case." 11 U.S.C. § 541(a)(1). This definition encompasses all kinds of tangible and intangible assets, including personal injury claims and including property that may be exempt under state law. *See, e.g.*, *In re Orso*, 283 F.3d 686, 691 (5th Cir. 2002); *In re Wischan*, 77 F.3d 875, 877 (5th Cir. 1996); *Tignor v. Parkinson*, 729 F.2d 977, 980 (4th Cir. 1984). The estate is represented by a trustee, who has the capacity to file suit to assert the debtor's claims. *See* 11 U.S.C. § 323.

The debtor must file a schedule of assets and liabilities at the time of the petition (11 U.S.C. § 521(a)(1)(B)(i); Fed. R. Bankr. P. 1007) and must list all property that the debtor claims as exempt. 11 U.S.C. § 522(l). A party in interest to the bankruptcy proceeding, in turn, may object to the debtor's claims for exemptions. Fed. R. Bankr. P. 4003(b)(1). "If an interested party fails to object within the time allowed, a claimed exemption will exclude the subject property from the estate[.]" *Schwab v. Reilly*, 560 U.S. 770, 775 (2010).

Maryland residents can claim exemptions under state law, including an exemption "from execution on a judgment" that is "payable in the event of sickness, accident, injury,

or death of any person, including compensation for loss of future earnings."  CJP §

11-504(b)(2); *see In re Dobbins*, 249 B.R. 849, 851-52 & nn. 3-4 (Bankr. D. Md. 2000).

Debtors may amend or supplement their schedules as a matter of course before the

bankruptcy case closes.  Fed. R. Bankr. P. 1009(a).  In addition, the bankruptcy court has

discretion to reopen a case "to administer assets, to accord relief to the debtor, or for other

cause."  11 U.S.C. § 350; *see* Fed. R. Bankr. P. 5010; *In re Thompson*, 16 F.3d 576, 581

(4th Cir. 1994).  The bankruptcy court has discretion to permit a party to perform an act,

such as the filing of amended asset schedules, even after the specified period in which the

act is required or allowed to be done.  Fed. R. Bankr. P. 9006(b)(1) ("the court for cause

shown may at any time in its discretion for cause shown . . . on motion made after the

expiration of the specified period permit the act to be done where the failure to act was

the result of excusable neglect").  It was pursuant to these provisions that the bankruptcy

court permitted Schlotzhauer to reopen her bankruptcy case, file amended schedules, and

claim an exemption for her cause of action against Uni-Select.[7]

---

[7] Both parties have debated the implications of the inaccurate schedules that Schlotzhauer originally filed with her initial bankruptcy petition.  Schlotzhauer maintains that the omission of her personal injury claim was entirely innocent; Uni-Select responds that it was her sole responsibility as the debtor to ensure the accuracy of her schedules, which she submitted under penalty of perjury.  Schlotzhauer's culpability is ultimately irrelevant to this opinion.  While that factor may have been important in the bankruptcy court's discretionary decision to accept amended schedules after the closing of her case (*see* Fed. R. Bankr. P. 9006(b)(1)), it is not our prerogative to review that court's exercise of discretion.  Our review concerns only the effect of the bankruptcy court's ultimate legal conclusion upon the action in the circuit court.

In granting summary judgment in Uni-Select's favor on January 8, 2014, the circuit court asserted that the bankruptcy court had "not taken any action" yet and that the cause of action "currently" belonged to the bankruptcy estate. Unbeknownst to the circuit court, however, the bankruptcy court had just ruled that, after the allowance of the exemption, which took effect on November 26, 2013, the claim "belonged and belongs" to Schlotzhauer.

In light of the bankruptcy court's clear ruling on this principle of federal bankruptcy law, the circuit court's contrary conclusion was legally incorrect, as was the accompanying grant of summary judgment. When Schlotzhauer brought the error to the circuit court's attention, therefore, it was obligated to revisit its ruling and to consider the consequences of its unintended error. *See Williams*, 361 Md. at 153; *Wormwood*, 124 Md. App. at 701; *see also Garliss*, 97 Md. App. at 105.[8]

---

[8] In its initial grant of summary judgment, the circuit court had relied prominently on *Bowie v. Rose Shanis Financial Services, LLC*, 160 Md. App. 227 (2004), in which this Court affirmed the entry of summary judgment against a bankrupt debtor who had never disclosed his claim in his bankruptcy case (*id.* at 232); whose claim was plainly not exempt from creditor claims (*id.* at 249); and who, in any event, had never sought (much less obtained) an exemption. *Id.* Even before the bankruptcy court handed down its decisions concerning when Schlotzhauer reacquired her claim, *Bowie* was readily distinguishable from this case: Schlotzhauer disclosed her claim (albeit belatedly); she claimed an exemption; and she was very clearly entitled to the exemption. *See* CJP § 11-504(b)(2). These factors placed Schlotzhauer's claim "outside the bankruptcy estate the trustee is charged to administer." *Schwab v. Reilly*, 560 U.S. 770, 800 (2010).

**B.     Even if Schlotzhauer Filed Suit When She Had No Right to Assert the Claim, She Could Maintain the Suit Once She Reacquired the Claim**

In her post-judgment motion, Schlotzhauer brought the bankruptcy court's initial decision to the circuit court's attention and asked the court to correct its erroneous conclusion that the cause of action "currently" belonged to the bankruptcy estate. Uni-Select responded that, even if the cause of action had revested in Schlotzhauer before the grant of summary judgment, the decision was still correct because the statute of limitations had run by the time Schlotzhauer reacquired the claim in November 2013 (the injury having occurred more than three years earlier, on January 4, 2010). Uni-Select based its argument on the premise that, upon reacquiring the claim, Schlotzhauer was obligated to file a new complaint.

While the circuit court credited that argument in granting summary judgment, and appears to have credited it in denying the post-judgment motion (*see Wormwood*, 124 Md. App. at 701), the argument has no support in Maryland law. Even if Schlotzhauer had no right to assert her personal injury claims from the time when she filed suit in December 2012 until November 26, 2013, the thirtieth day after the allowance of her exemptions, she acquired the right to continue and maintain the preexisting lawsuit asserting when she became vested with the right to assert those claims.

In *Pacific Mortgage and Inv. Group, Ltd. v. Horn*, 100 Md. App. 311, 319-21 (1994), Horn filed suit at a time when her bankruptcy trustee alone had the right to assert the claim, as did Schlotzhauer in this case. While Horn's suit was pending, however, her

-19-

trustee closed the bankruptcy case and abandoned the claim (which Horn had disclosed). On those facts, this Court considered whether Horn could maintain the suit even though she was not initially "the proper party to bring the suit." *Id.* at 321.

Quoting *Barletta v. Tedeschi*, 121 B.R. 669, 673 (N.D.N.Y. 1990), this Court rejected the proposition that the "'premature filing'" of the complaint "'is a bar to [the] continuation of the action now.'" *Horn*, 100 Md. App. at 321. "'When the trustee abandons estate property, the property stands as if no bankruptcy had been filed and the debtor enjoys the same claim to it as he held previous to the filing of the bankruptcy.'" *Id.* (quoting *Barletta*, 121 B.R. at 673) (internal citations omitted). Accordingly, even though Horn did not have the right to assert her claims when she commenced the case, she could maintain the action after she acquired the right to assert those claims.

Here, the trustee did not abandon the claim, as he did in *Horn*; rather, in the first decision, the bankruptcy court ruled that the claim was no longer the property of the bankruptcy estate because it was exempt from the claims of Schlotzhauer's creditors. Nevertheless, the effect is exactly the same in both cases. Whether through abandonment by the trustee or through the allowance of the exemption by the bankruptcy court, the debtor reacquired her claim by operation of law; she was not required to file an entirely new action. To the extent that the circuit court based its rulings on a contrary conclusion, it was incorrect.

**C.** **When She Reacquired the Claim, Schlotzhauer Replaced the Trustee as the Real Party in Interest**

In procedural terms, Horn and Schlotzhauer were not the "real parties in interest" until they reacquired their claims; their bankruptcy trustees were.

Md. Rule 2-201 addresses the requirement that an action be brought by the real party in interest:

> Every action shall be prosecuted in the name of the real party in interest, except that an executor, administrator, personal representative, guardian, bailee, trustee of an express trust, person with whom or in whose name a contract has been made for the benefit of another, receiver, trustee of a bankrupt, assignee for the benefit of creditors, or a person authorized by statute or rule may bring an action without joining the persons for whom the action is brought. When a statute so provides, an action for the use or benefit of another shall be brought in the name of the State of Maryland. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for joinder or substitution of the real party in interest. The joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

In *Adams v. Manown*, 328 Md. 463, 480 (1992), the Court of Appeals confronted another bankruptcy-related case in which the action had "not been brought by the real party in interest." In that unusual case, Adams had concealed a claim from his bankruptcy trustee and his creditors, filed suit to enforce the claim after he emerged from bankruptcy, and recovered a $43,000.00 judgment on it. On appeal, the Court of Appeals, on its own motion, recognized that the claim belonged to Adams's bankruptcy estate even though the estate was closed (*id.* at 478), that Adams's former trustee was the real party in interest (*id.* at 477), and that Adams himself lacked "standing." *Id.* at 480.

-21-

In those circumstances, the court allowed the bankruptcy trustee to substitute for Adams. *Id.* at 480-81. The court did *not* require the trustee to file a new action. *See id.* at 481 (quoting P. Niemeyer and L. Richards, *Maryland Rules Commentary* 92 (1984) ("[u]nder Rule 2-201, 'the real party in interest simply steps into the shoes of the plaintiff who commenced the action'")).

In light of *Adams* and *Horn*, Schlotzhauer became the real party in interest and was able to continue the action at least as of November 26, 2013, when the bankruptcy court's first opinion said she reacquired her claim. Under neither case was she required to initiate a new action.

Notwithstanding *Adams* and *Horn*, Uni-Select theorizes that Schlotzhauer's complaint was a "nullity" that did not confer jurisdiction on the circuit court. Uni-Select makes a number of analogies, likening the premature complaint, among other things, to a complaint filed by a corporation that did not legally exist because of a forfeited charter. *See*, *e.g.*, *Tri-County Unlimited, Inc. v. Kids First Swim Sch., Inc.*, 191 Md. App. 613, 624 (2010). The analogy is inapt. In the case of a complaint brought by a corporation that has forfeited its charter, the action is a nullity because no one has the right to assert the claim until the corporation reinstates its charter. In this case, by contrast, someone – namely, Schlotzhauer's bankruptcy trustee – had the right to assert her claim all along. The problem here was not that no one had the right to assert the claim, but that the person who had the right – *i.e.*, the real party in interest – was not before the court. When

Schlotzhauer remedied that problem by exempting her claims from the bankruptcy estate, she became the real party in interest and, under *Adams* and *Horn*, acquired the right to maintain the claim.

**D.    When Schlotzhauer Replaced the Trustee as Real Party in Interest, Her Rights Related Back to the Commencement of the Lawsuit**

Uni-Select, however, argued that limitations still barred Schlotzhauer from proceeding because she lacked "standing" (*i.e.*, because she was not the real party in interest) on December 27, 2012, the date when she filed suit.  Uni-Select fails to account for the operation of the doctrine of relation back.

In *Crowe v. Houseworth*, 272 Md. 481 (1974), the Court of Appeals held that a circuit court abused its discretion by denying a plaintiff's request to join certain co-plaintiffs as necessary parties after the expiration of the statute of limitations.  *Id.* at 489.  In that case, Crowe brought an action for trespass to real property (*id.* at 483), but the circuit court entered judgment against him on the ground that he owned the property jointly with eleven others whom he could not join because the statute of limitations had expired.

On review, the Court of Appeals agreed that Crowe could not prosecute the action without joining the other joint tenants as parties.  *Id.*  Nevertheless, the Court observed that Crowe himself had filed suit within the limitations period and that the joinder of the additional parties would affect "neither the gravamen of the action nor the measure of damages."  *Id.* at 485.  The Court adopted the modern view that the doctrine of relation

back should prevent the defendant, Houseworth, from invoking the statute of limitations to bar the joinder of the additional parties. *Id.* at 485-86. The Court explained: "'when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of the opinion that a liberal rule should be applied.'" *Id.* at 489 (quoting *New York Cent. & Hudson River Railroad Co. v. Kinney*, 260 U.S. 340, 346 (1922) (Holmes, J.)).

Strictly speaking, this case does not involve the joinder of necessary parties after limitations has run; it involves Schlotzhauer's accession to the status of the real party in interest after limitations has run. Nonetheless, the governing principles are the same. Uni-Select agreed that it "had notice from the beginning" that Schlotzhauer was "trying to enforce a claim against it because of specified conduct." *Crowe*, 272 Md. at 489.[9]

In these circumstances, there is no reason why relation back should not apply. *Id.* In other words, there is no reason why we should not treat the complaint as having been filed within the statute of limitations, even if, under the bankruptcy court's first opinion, Schlotzhauer had no right to prosecute that complaint until November 26, 2013, after limitations had run. *See Newman v. Enriquez*, 171 Ohio App. 3d 117, 127-31 (Ct. App.

---

[9] At oral argument, Schlotzhauer represented that Uni-Select's insurer had received notice of the claim immediately after the accident and had paid for her property damage. Uni-Select agreed that it received notice of Schlotzhauer's claim well within the limitations period.

2007) (employing doctrine of relation-back to reverse grant of summary judgment on limitations grounds where plaintiffs filed suit when their bankruptcy trustee was real party in interest, but became real parties in interest when trustee abandoned claim).

This conclusion is supported by the procedure that the Court of Appeals devised in *Adams v. Manown*. In that case, the claim had accrued at some point before June 26, 1989, when Adams filed suit to assert his putative rights. *See Adams*, 328 Md. at 468-69. The Court of Appeals, however, did not hold that Adams lacked standing to assert his rights until almost three years and five months later, on November 23, 1992. Even then, the Court gave Adams's trustee another 60 days to intervene in the case as the real party in interest. *Id.* at 481. But although limitations would certainly have run by the time the trustee eventually intervened, the Court of Appeals was untroubled by the prospect of limitations, making no mention of it all. This is presumably because the Court understood that the substitution of the trustee would relate back to the filing of the original complaint. *See* Md. Rule 2-201 ("[t]he joinder or substitution [of the real party in interest] shall have the same effect as if the action had been commenced in the name of the real party in interest").

In dictating that a court must proceed as though the real party in interest had commenced the action even if he or she is not joined or substituted into the case until sometime thereafter, Rule 2-201 clearly envisions that the joinder or substitution relates back to the time of filing of the initial complaint. Yet, "[i]f the rule permits the

-25-

substitution of the real party in interest to relate back, avoiding the bar of the statute of limitations, logic dictates that it applies equally where the party commencing the action becomes the real party in interest during the pendency of the action." *Newman v. Enriquez*, 171 Ohio App. 3d at 130.[10]

It follows that, even under the bankruptcy court's first order, in which Schlotzhauer was deemed to have reacquired her claims and to have become the real party in interest only as of November 26, 2013, her status as real party in interest related back to the filing of the initial complaint within the period of limitations on December 27, 2012. It is, therefore, incorrect, as a matter of law, to assert that limitations would bar Schlotzhauer's claims if she had reacquired them only as of November 26, 2013. Accordingly, when Schlotzhauer's timely post-judgment motion informed the circuit court that it had based the grant of summary judgment on the erroneous premise that she had no right to assert her claims as of the date of summary judgment, the circuit court should have reconsidered its decision and rescinded the grant of summary judgment.[11]

---

[10] We apply the doctrine of relation back in part because the real-party-in-interest rule does not serve the same purpose as the statute of limitations. Limitations protects defendants against stale claims (*see Anderson v. United States*, 427 Md. 99, 118 (2012)), while the real-party-in-interest rule protects defendants against multiple claims. *See, e.g.*, *Rodriguez v. Compass Shipping Co., Ltd.*, 617 F.2d 955, 958 (2d Cir. 1980) (citing Fed. R. Civ. P. 17(a)).

[11] What happened here is not substantially different from what might occur in other instances in which a party prematurely asserted a claim that the party later acquired by operation of law. *E.g., Safeway Ins. Co. v. Collins*, 192 Ariz. 262, 266-67 (Ct. App. 1998) (holding that trial court erred in summarily dismissing premature tort claim filed by

(continued...)

**E.     As a Matter of Federal Bankruptcy Law, Schlotzhauer Owned the Claim as of the Filing of the Complaint**

Nonetheless, if any question remained as to Schlotzhauer's ability to assert her claims, the bankruptcy court put it to rest in its second opinion on January 24, 2014.  In that opinion, the bankruptcy court revised its earlier conclusion and ruled that, as a matter of federal bankruptcy law, the cause of action had become revested in Schlotzhauer upon the allowance of the exemption and that the revesting related back to the filing of her petition, on October 6, 2010.  Even though Schlotzhauer retroactively acquired the claim by operation of law after she had filed suit, there is no serious question, in view of the bankruptcy court's ruling, that under federal bankruptcy law Schlotzhauer owned her claim as of October 6, 2010, and that she had standing to assert the claim when she filed suit, within the three-year statute of limitations, on December 27, 2012.

Schlotzhauer promptly informed the circuit court of the bankruptcy court's second decision.  As a matter of federal bankruptcy law, that decision refutes the central premises of Uni-Select's argument in support of summary judgment – *i.e.*, that Schlotzhauer did not own her claim and that, if she had reacquired it, it was still barred by limitations.  The circuit court considered the bankruptcy court's second decision at a hearing on the post-judgment motion, but appears not to have accounted for that decision in denying the post-

---

[11] (...continued) insurer as prospective subrogee without permitting insurer to cure defect by joining insured as co-plaintiff, where insurer was not real party in interest when action was filed because its subrogation rights had not yet vested within limitations period for tort claim).

judgment motion. The court certainly did not explain why it declined to reconsider the grant of summary judgment in light of the bankruptcy court's decision that, as a matter of federal bankruptcy law, Schlotzhauer had owned the claim all along.

In a final defense of the circuit court's decision, Uni-Select argues that the bankruptcy court exceeded its jurisdiction or decided a question of Maryland law. We disagree. In moving for summary judgment, Uni-Select argued that, as a matter of federal bankruptcy law, Schlotzhauer did not have the right to assert her claim. The bankruptcy court held that the premise for Uni-Select's motion was incorrect and that, as a matter of federal bankruptcy law, Schlotzhauer *did* have the right to assert her claim – and, indeed, had had it since before the commencement of the lawsuit. As the circuit court correctly recognized, it "ha[d] no authority to make" a "determination" about when and whether Schlotzhauer acquired her claim, because that "is a matter of federal bankruptcy law, under the jurisdiction of a federal bankruptcy court." Consequently, once the bankruptcy court rejected the premise for Uni-Select's motion, the circuit court should have vacated the grant of summary judgment in Uni-Select's favor.[12]

Because the bankruptcy court's second decision amounts to a material development that Schlotzhauer could not have brought to the court's attention before the

---

[12] It is by no means unusual for the outcome of bankruptcy proceedings to have some material effect on the rights of a party in an action in the Maryland courts. *See*, *e.g.*, *WinMark Ltd. P'ship v. Miles & Stockbridge*, 345 Md. 614, 629-30 (1997); *Adams*, 328 Md. at 480-81; *Horn*, 100 Md. App. at 320-21; *cf. GAB Enters., Inc. v. Rocky Gorge Dev., LLC*, 221 Md. App. 171 (2015).

court had granted summary judgment, the circuit court erred in declining to vacate that ruling in response to the motion to alter or amend.[13]

## CONCLUSION

When the circuit court initially granted summary judgment on the ground that Schlotzhauer did not own her claim, it did not know of the bankruptcy court's near-simultaneous decision that she had acquired the claim six weeks before. Nonetheless, once Schlotzhauer brought that decision to the circuit court's attention, as she did in her timely post-judgment motion to alter or amend, the court had an obligation to consider that new legal development. The court also had an obligation to consider the bankruptcy court's subsequent decision that Schlotzhauer had owned the claim from the inception of her lawsuit.

Although the court fulfilled its obligation to consider those decisions, it reached the erroneous conclusion. Under either of the bankruptcy court's decisions, the grant of summary judgment was no longer tenable. Because the court, therefore, erred in denying the motion to alter or amend the judgment, we vacate the grant of summary judgment. *See Williams*, 361 Md. at 152-53; *Wormwood*, 124 Md. App. at 701.

---

[13] At various points, both Uni-Select and the circuit court incorrectly spoke as though the court lacked "subject matter jurisdiction" because of Schlotzhauer's putative lack of "standing." These ill-fitting references to "subject matter jurisdiction" derive from federal cases, which hold that there is no "case or controversy" within the meaning of Article III, section 2, of the federal Constitution, if a plaintiff lacks standing.

**JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.**